## BURNET, COMMISSIONER OF INTERNAL REVENUE, v. WELLS.

No. 792. Argued May 10, 1933.—Decided May 29, 1933.

Mr. *Erwin N. Griswold,* with whom *Solicitor General Thacher, Miss Helen R. Carloss,* and *Mr. Sewall Key* were on the brief, for petitioner.

Mr. *J. S. Y. Ivins,* with whom *Messrs. Kingman Brewster, Percy W. Phillips,* and *Richard B. Barker* were on the brief, for respondent.

Mr. Justice Cardozo delivered the opinion of the Court.

Income of a trust has been reckoned by the taxing officers of the Government as income to be attributed to

the creator of the trust in so far as it has been applied to the maintenance of insurance on his life. Section 219 (h) of the Revenue Acts of 1924 and 1926 permits this to be done. The question is whether as applied to this case the acts are constitutional.

On December 30, 1922, the respondent, Frederick B. Wells, created three trusts, referred to in the record as numbers 1, 2 and 3, and on August 6, 1923, two additional ones, numbers 4 and 5, all five being irrevocable.

By trust number 1, he assigned certain shares of stock of the par value of $100,000 to the Minneapolis Trust Company as trustee. The income of the trust was to be used to pay the annual premiums upon a policy of insurance for $100,000 on the life of the grantor. After the payment of the premiums, the excess income, if any, was to be accumulated until an amount sufficient to pay an additional annual premium had been reserved. Any additional income was, in the discretion of the trustee, to be paid to a daughter. Upon the death of the grantor, the trustee was to collect the policy, and with the proceeds was to buy securities belonging to the Wells estate amounting to $100,000 at their appraised value. The securities so purchased, which were a substitute for the cash proceeds of the policy, were to be held as part of the trust during the life of the daughter, who was to receive the income. On her death the trust was to end, and the corpus was to be divided as she might appoint by her will, and, in default of appointment or issue, to the grantor's sons.

The other trusts carried out very similar plans, though for the use of other beneficiaries. Thus, trust number 2 had in view the preservation of a policy of life insurance which was to be held when collected for the use of one Lindstrom, said to be a kinswoman. Trust number 3 was directed to the maintenance of four policies of insurance for named beneficiaries, three of them relatives of the

grantor and one a valued employee, who later became his wife. Trust number 4 kept alive seven policies of life insurance which had been taken out by the grantor for the use of sons and daughter, and three accident policies for his own use. Trust number 5 kept alive nine life policies for his sons and daughter, and two accident policies for himself. Several of the deeds made provision for contingent limitations for the benefit of charities.

The grantor in making the returns of his own income for the years 1924, 1925, and 1926, did not include any part of the income belonging to the trusts. Upon an audit of the returns the Commissioner of Internal Revenue assessed a deficiency to the extent that the income of the trusts had been applied to the payment of premiums on the policies of insurance. There was no attempt to charge against the taxpayer the whole income of the trusts, to charge him with the excess applied to other uses than the preservation of the policies. The deficiency assessment was limited to that part of the income which had kept the policies alive. The Board of Tax Appeals upheld the Commissioner. 19 B.T.A. 1213. The Circuit Court of Appeals reversed except as to the premiums on the policies of accident insurance, those policies, in the event of loss thereunder, being payable to the insured himself. As to the income applied to the maintenance of the policies of life insurance, payable, as they were, to persons other than the insured or his estate, the Court of Appeals held that an assessment could not be made against the creator of the trust without an arbitrary taking of his property in violation of the Fifth Amendment. 63 F. (2d) 425. Section 219 (h) of the Revenue Acts of 1924 and 1926, permitting such an assessment, was adjudged to be void. The court drew no distinction between the validity of the statute in its application to trusts in existence at the time of its enactment and its validity in

application to trusts to be created afterwards. A writ of certiorari brings the case here.

The meaning of the statute is not doubtful, whatever may be said of its validity. " Where any part of the income of a trust is or may be applied to the payment of premiums upon policies on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 214 [the exception having relation to trusts for charities]), such part of the income of the trust shall be included in computing the net income of the grantor." Section 219 (h), Revenue Act of 1924, c. 234; 43 Stat. 253; 26 U.S. Code, § 960; Revenue Act of 1926, c. 27, 44 Stat. 9; 26 U.S. Code App., § 960.

The purpose of the law is disclosed by its legislative history, and indeed is clear upon the surface. When the bill which became the Revenue Act of 1924 was introduced in the House of Representatives, the Report of the Committee on Ways and Means made an explanatory statement. Referring to § 219 (h) it said: " Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion." House Report, No. 179, 68th Congress, 1st Session, p. 21. There is a like statement in the Report of the Senate Committee on Finance. Senate Report, No. 398, 68th Congress, 1st Session, pp. 25, 26. By the creation of trusts, incomes had been so divided and subdivided as to withdraw from the Government the benefit of the graduated taxes and surtaxes applicable to income when concentrated in a single ownership. Like methods of evasion, or, to speak more accurately, of avoidance (*Bullen* v. *Wisconsin*, 240 U.S. 625, 630), had been used to diminish the transfer or succession taxes payable at death. One can read in the revisions of the revenue

acts the record of the Government's endeavor to keep pace with the fertility of invention whereby taxpayers had contrived to keep the larger benefits of ownership and be relieved of the attendant burdens.

A method, much in vogue until an amendment made it worthless, was the creation of a trust with a power of revocation. This device was adopted to escape the burdens of the tax upon incomes and the tax upon estates. To neutralize the effect of the device in its application to incomes, Congress made provision by § 219 (g) of the Revenue Act of 1924 that " where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor." The validity of this provision was assailed by taxpayers. It was upheld by this court in *Corliss* v. *Bowers*, 281 U.S. 376, as applied to a trust in existence at the enactment of the statute, the power of revocation in that case being reserved to the grantor alone, and recently, at the present term, was upheld where the power of revocation had been reserved to the grantor in conjunction with some one else. *Reinecke* v. *Smith, ante,* p. 172. Cf. *Burnet* v. *Guggenheim,* 288 U.S. 280. Other amendments of the statute were directed to the trust as an instrument for the avoidance of the tax upon estates. By § 302 (d) of the Revenue Act of 1924, the gross estate of a decedent is to be taken as including the subject of any trust which he has created during life " where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide

sale for a fair consideration in money or money's worth." The validity of this provision as to trusts both past and future is no longer open to debate. *Porter* v. *Commissioner*, 288 U.S. 436. Cf. *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339; *Chase National Bank* v. *United States*, 278 U.S. 327; *Saltonstall* v. *Saltonstall*, 276 U.S. 260. Through the devices thus neutralized as well as through many others there runs a common thread of purpose. The solidarity of the family is to make it possible for the taxpayer to surrender title to another and to keep dominion for himself, or if not technical dominion, at least the substance of enjoyment. At times escape has been blocked by the resources of the judicial process without the aid of legislation. Thus, *Lucas* v. *Earl*, 281 U.S. 111, held that the salary earned by a husband was taxable to him, though he had bound himself by a valid contract to assign it to his wife. *Burnet* v. *Leininger*, 285 U.S. 136, laid down a like rule where there had been an assignment by a partner of his interest in the future profits of a partnership. *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, and *United States* v. *Boston & Maine R. Co.*, 279 U.S. 732, held that income was received by a taxpayer when pursuant to a contract a debt or other obligation was discharged by another for his benefit, the transaction being the same in substance as if the money had been paid to the debtor and then transmitted to the creditor. Cf. *United States* v. *Mahoning Coal R. Co.*, 51 F. (2d) 208. In these and other cases there has been a progressive endeavor by the Congress and the courts to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment or fruition. Of a piece with that endeavor is the statute now assailed.

The controversy is one as to the boundaries of legislative power. It must be dealt with in a large way, as questions of due process always are, not narrowly or pedanti-

cally, in slavery to forms or phrases. " Taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers, supra,* p. 378. Cf. *Burnet* v. *Guggenheim, supra,* p. 283. Refinements of title have at times supplied the rule when the question has been one of construction and nothing more, a question as to the meaning of a taxing act to be read in favor of the taxpayer. Refinements of title are without controlling force when a statute, unmistakable in meaning, is assailed by a taxpayer as overpassing the bounds of reason, an exercise by the lawmakers of arbitrary power. In such circumstances the question is no longer whether the concept of ownership reflected in the statute is to be squared with the concept embodied, more or less vaguely, in common law traditions. The question is whether it is one that an enlightened legislator might act upon without affront to justice. Even administrative convenience, the practical necessities of an efficient system of taxation, will have heed and recognition within reasonable limits. *Milliken* v. *United States,* 283 U.S. 15, 24, 25; *Reinecke* v. *Smith, supra.* Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. *Corliss* v. *Bowers, supra; Reinecke* v. *Smith, supra.* Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax not only ownership, but any right or privilege that is a constituent of ownership. *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U.S. 249, 268; *Bromley* v. *McCaughn,* 280 U.S. 124, 136. Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis. A margin must be allowed for the play of legisla-

tive judgment. To overcome this statute the taxpayer must show that in attributing to him the ownership of the income of the trusts, or something fairly to be dealt with as equivalent to ownership, the lawmakers have done a wholly arbitrary thing, have found equivalence where there was none nor anything approaching it, and laid a burden unrelated to privilege or benefit. *Purity Extract & Tonic Co.* v. *Lynch,* 226 U.S. 192, 204; *Hebe Co.* v. *Shaw,* 248 U.S. 297, 303; *Milliken* v. *United States, supra.* The statute, as we view it, is not subject to that reproach.*

A policy of life insurance is a contract susceptible of ownership like any other chose in action. It "is not an assurance for a single year with a privilege of renewal from year to year by paying the annual premium." It is "an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums." *N.Y. Life Insurance Co.* v. *Statham,* 93 U.S. 24, 30; Vance on Insurance, pp. 260, 262, and cases there cited. One who takes out a policy on his own life, after application in his own name accepted by the company, becomes in so doing a party to a contract, though the benefits of the insurance are to accrue to some one else. *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 263 U.S. 167, 177; Vance on Insurance, pp. 90, 91 and 108. The rights and interests thereby generated do not inhere solely in those who are to receive the proceeds. They inhere also in the insured who in coöperation with the insurer has brought the contract into being. If the Minneapolis Trust Company, the trustee, were to refuse to apply the income to the preservation of the insurance,

---

* The trusts, having been created in 1922 and 1923, were not subject to the gift tax of 1924, 43 Stat. 253, 313, c. 234, §§ 319, 320; 26 U.S. Code, §§ 1131, 1132. Whether they would have been subject to that tax if they had been created at a later date is a question not before us. There is no inconsistency between a gift to take effect in enjoyment upon the death of a grantor and the reservation of benefits to be enjoyed during his life.

the insured might maintain a suit to hold it to its duty. If the insurer without cause were to repudiate the policies, the insured would have such an interest in the preservation of the contracts that he might maintain a suit in equity to declare them still in being. *Cohen* v. *N.Y. Mut. L. Ins. Co.*, 50 N.Y. 610, 624; *Meyer* v. *Knickerbocker L. Ins. Co.*, 73 N.Y. 516, 524; *Fidelity National Bank* v. *Swope*, 274 U.S. 123, 132; cf. *Croker* v. *N.Y. Trust Co.*, 245 N.Y. 17, 18, 20; 156 N.E. 81; *Johnson Service Co.* v. *Monin, Inc.*, 253 N.Y. 417, 421; 171 N.E. 692; American Law Institute, Restatement of the Law of Contracts, §§ 135, 138; Williston, Contracts, §§ 358, 359. The contracts remain his, or his at least in part, though the fruits when they are gathered are to go to some one else. American Law Institute, Restatement of the Law of Contracts, *supra.*

With the aid of this analysis the path is cleared to a conclusion. Wells, by the creation of these trusts, did more than devote his income to the benefit of relatives. He devoted it at the same time to the preservation of his own contracts, to the protection of an interest which he wished to keep alive. The ends to be attained must be viewed in combination. True he would have been at liberty, if the trusts had not been made, to put an end to his interest in the policies through nonpayment of the premiums, to stamp the contracts out. The chance that economic changes might force him to that choice was a motive, along with others, for the foundation of the trusts. In effect he said to the trustee that for the rest of his life he would dedicate a part of his income to the preservation of these contracts, so much did they mean for his peace of mind and happiness. Income permanently applied by the act of the taxpayer to the maintenance of contracts of insurance made in his name for the support of his dependents is income used for his benefit in such a sense and to

such a degree that there is nothing arbitrary or tyrannical in taxing it as his.

Insurance for dependents is today in the thought of many a pressing social duty. Even if not a duty, it is a common item in the family budget, kept up very often at the cost of painful sacrifice, and abandoned only under dire compulsion. It will be a vain effort at persuasion to argue to the average man that á trust created by a father to pay premiums on life policies for the use of sons and daughters is not a benefit to the one who will have to pay the premiums if the policies are not to lapse. Only by closing our minds to common modes of thought, to everyday realities, shall we find it in our power to form another judgment. The case is not helped by imagining exceptional conditions in which the advantage to the creator of the trust would be slender or remote. By and large the purpose of trusts for the maintenance of policies is to make provision for dependents, or so at least the lawmakers might not unreasonably assume. Trusts to give insurance to creditors are beneficial to the grantor by reducing his indebtedness. Trusts for charities are expressly excepted from the operation of the tax. § 219 (h); § 214 (a)(10). If other classes of life policies exist, they must be relatively few. The line of division between the rational and the arbitrary in legislation is not to be drawn with an eye to remote possibilities. What the law looks for in establishing its standards is a probability or tendency of general validity. If this is attained, the formula will serve, though there are imperfections here and there. The exceptional, if it arises, may have its special rule. *Dahnke-Walker Co.* v. *Bondurant,* 257 U.S. 282, 289.

Trusts for the preservation of policies of insurance involve a continuing exercise by the settlor of a power to direct the application of the income along predetermined

channels. In this they are to be distinguished from trusts where the income of a fund, though payable to wife or kin, may be expended by the beneficiaries without restraint, may be given away or squandered, the founder of the trust doing nothing to impose his will upon the use. There is no occasion at this time to mark the applicable principle for those and other cases. The relation between the parties, the tendency of the transfer to give relief from obligations that are recognized as binding by normal men and women, will be facts to be considered. Cf. *Reinecke* v. *Smith, supra,* distinguishing *Hoeper* v. *Tax Commission,* 284 U.S. 206. We do not go into their bearing now. Here the use to be made of the income of the trust was subject, from first to last, to the will of the grantor announced at the beginning. A particular expense, which for millions of men and women has become a fixed charge, as it doubtless was for Wells, an expense which would have to be continued if he was to preserve a contract right, was to be met in a particular way. He might have created a blanket trust for the payment of all the items of his own and the family budget, classifying the proposed expenses by adequate description. If the transaction had taken such a form, one can hardly doubt the validity of a legislative declaration that income so applied should be deemed to be devoted to his use. Instead of shaping the transaction thus, he picked out of the total budget an item or class of items, the cost of continuing his contracts of insurance, and created a source of income to preserve them against lapse.

Congress does not play the despot in ordaining that trusts for such uses, if created in the future, shall be treated for the purpose of taxation as if the income of the trust had been retained by the grantor.

It does not play the despot in ordaining a like rule as to trusts created in the past, at all events when in so doing it does not cast the burden backward beyond the income

of the current year. *Reinecke* v. *Smith, supra; Corliss* v.
*Bowers, supra; Brushaber* v. *Union Pacific R. Co.*, 240
U.S. 1; *Cooper* v. *United States*, 280 U.S. 409, 411;
*Milliken* v. *United States, supra.*

The judgment is

*Reversed.*

MR. JUSTICE SUTHERLAND, dissenting.

MR. JUSTICE VAN DEVANTER, MR. JUSTICE MCREY-
NOLDS, MR. JUSTICE BUTLER and I think otherwise.

The powers of taxation are broad, but the distinction
between taxation and confiscation must still be observed.
So long as the Fifth Amendment remains unrepealed and
is permitted to control, Congress may not tax the property
of A as the property of B, or the income of A as the income
of B.

The facts here show that Wells created certain irrevo-
cable trusts. He retained no vestige of title to, interest
in, or control over, the property transferred to the trustee.
The result was a present, executed, outright gift, which
could then have been taxed to the settlor. *Burnet* v. *Gug-
genheim*, 288 U.S. 280. That the property which was the
subject of the gift could never thereafter, without a change
of title, be taxed to the settlor is, of course, too plain
for argument. To establish the contention that the in-
come from such property, the application of which for
the benefit of others had been irrevocably fixed, is never-
theless the income of the settlor and may lawfully be taxed
as his property, requires something more tangible than a
purpose to perform a social duty, or the recognition of a
moral claim as distinguished from a legal obligation, which,
we think, is not supplied by an assumption of his desire
thereby to secure his own peace of mind and happiness
or relieve himself from further concern in the matter. If
the trusts in question had irrevocably devoted the income

to charitable purposes, to the cause of scientific research, or to the promotion of the spread of religion among the heathen, and the statute had authorized its taxation, probably no thoughtful person would have insisted that the relation of the settlor to the benefaction was such as constitutionally to justify the tax against him. And yet in each of these supposed cases it would not be hard to find a purpose to discharge a social duty, or unreasonable to assume the desire of the settlor thereby to enjoy the mental comfort which is supposed to follow the voluntary performance of righteous deeds.

If there be any difference between the cases supposed and the present one, it is a difference without real substance. In each the motive of the taxpayer is immaterial. The material question is, what has he done?—not, why has he done it?—however pertinent the latter query might be in a different case. Obviously, as it seems to us, the distinction to be observed is between the devotion of income to payments which the settlor is bound to make, and to those which he is free to make or not make, as he may see fit. In the former case the payments have the substantial elements of income to the settlor. In the latter, whatever may be said of the moral influence which induced the settlor to direct the payments, they are income of the trustee for the benefit of others than the settlor.

It is not accurate, we think, to say that these trusts involve the continuing exercise by the settlor of a power to direct the application of the income along predetermined channels. The exertion of power on the part of the settlor to direct such application begins and ends with the creation of the irrevocable trusts. Thereafter, the power is to be exercised automatically by the trustee under a grant which neither he nor the settlor can recall or abridge. The income, of course, is taxable, but to the trustee, not to the settlor. The well reasoned opinion of

the court below, which fully sustains respondent's contention here, renders it unnecessary to discuss the matter at greater length. We think that opinion should be sustained. It finds ample support in *Hoeper* v. *Tax Commission*, 284 U.S. 206, 215; *Heiner* v. *Donnan*, 285 U.S. 312, 326; and other decisions of this court.