Meredith Wood, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88426.  Promulgated June 17, 1938.

*George M. Wolfson, Esq.,* and *Ralph A. McClelland, Esq.,* for the petitioner.

*Arthur W. Carnduff, Esq.,* for the respondent.

### OPINION.

Tyson: This proceeding seeks redetermination of an income tax deficiency of $1,228.23 for the year 1934, of which amount $1,224.03 is in controversy.

Petitioner assigns error in the respondent's determination that a certain trust established by petitioner was a revocable trust and that petitioner received as taxable income in 1934 the sum of $8,750, paid as dividends on 25 shares of the capital stock of the Book-of-the-Month Club, Inc., which constituted the corpus of that trust.

The petitioner is an individual and a citizen of the United States, residing at Scarsdale, Town of Greenburgh, New York.

On April 8, 1931, the petitioner executed a declaration of trust, in which he, as the owner of 25 shares of the capital stock of Book-of-the-Month Club, Inc., and as the settlor, declared himself the trustee, "to hold the same in Trust, to hold, invest and reinvest the same, to collect the net income therefrom from the date hereof and to pay the said net income, as and when received by him, to his wife, Helen Martin Wood, until the termination of this trust."

The declaration of trust of April 8, 1931, provided, inter alia, that, "This trust shall continue in effect until (a) the expiration of three years from the date of this instrument, or (b) the death of the Settlor, or (c) the death of Helen Martin Wood, whichever event shall first happen, and shall thereupon terminate." Upon termination of the trust the property then held in trust would be transferred and delivered to the settlor to be his own property, except that in case of its termination by his death the property would be transferred and delivered to his executors to be disposed of as part of his estate under his last will and testament.  A supplementary declaration of

trust, executed by petitioner on March 25, 1932, extended the three-year period for the continuance of the trust to a five-year period from April 8, 1931.

The declarations of trust further provided that the settlor might resign as trustee and appoint a substitute trustee; that, without liability for loss not arising from willful misconduct, the trustee, whether original or substituted, had the power to retain the 25 shares of stock of the Book-of-the-Month Club, Inc., or to sell the same, or any part thereof, to make any investment or reinvestment of the property or money held in trust, to determine the value of the property, "to determine whether any property or money received or held in trust shall be treated as capital or income, and the mode in which any expense incidental to the execution of the trust is to be borne as between capital and income," and, further, that the trustee "shall at all times hold and dispose of said twenty-five shares of the capital stock of Book-of-the-Month Club, Inc., subject to the provisions and restrictions of a certain agreement in writing made and dated the 27th day of January, 1931, between Harry Scherman and the Settlor, to the same extent, as regards said agreement, as though said stock were held and owned by the Settlor as an individual." That agreement of January 27, 1931, placed certain restrictions upon the petitioner's disposition of his shares of stock of the Book-of-the-Month Club, Inc., by requiring that if he desired to dispose of the stock it should be first offered for sale to Scherman, that the certificates for such stock should bear a suitable legend containing reference to the agreement, and that petitioner should not pledge, mortgage, hypothecate, or otherwise encumber any of the shares without the consent of Scherman.

On April 8, 1931, the petitioner transferred 25 shares of stock of the Book-of-the-Month Club, Inc., to himself as trustee under the above mentioned declaration of trust and at all times thereafter, and until April 8, 1936, the petitioner, as trustee, continued to hold the stock as the sole corpus of that trust.

After April 8, 1931, and particularly during the year 1934, all dividends paid on the 25 shares of stock of the Book-of-the-Month Club, Inc., were received by petitioner as trustee and deposited by him in a special bank account entitled "Meredith Wood, Trustee," and all income from the trust was paid to Helen Martin Wood, the beneficiary, by checks drawn to her order and signed by the petitioner as trustee, no part of the income ever being distributed to the grantor or accumulated.

All of the dividends received by petitioner as trustee during the year 1934, amounting to $8,750, were included in the income tax return filed by Helen Martin Wood for the year 1934.

The petitioner duly filed his income tax return for the year 1934

with the collector of internal revenue at the Customs House, Borough of Manhattan, New York, New York, and paid the tax, in the sum of $1,278.96, shown to be due thereon. The petitioner did not include in that return any income from the above mentioned trust. The respondent has increased petitioner's income for 1934 by the amount of $8,750 representing the dividends paid during that year on the 25 shares of stock of the Book-of-the-Month Club, Inc., constituting the corpus of the trust.

The petitioner contends that the income from the trust, in the amount of $8,750 for the year 1934, constituted taxable income of the beneficiary, Helen Martin Wood. The respondent contends that the income from the trust is taxable to the grantor, petitioner, under the provisions of sections 166 and 167 of the Revenue Act of 1934.[1]

In *United States* v. *First National Bank of Birmingham*, 74 Fed. (2d) 360, a trust had been created for a period of one year, which terminated during the taxable year 1929, and the Commissioner contended that the income therefrom was taxable to the grantor during 1929 under section 166 of the Revenue Act of 1928, which provided in part: "Where the grantor of a trust has, at any time *during the taxable year*, * * * the power to revest in himself title to any part of the corpus of the trust, * * *" (italics supplied) then the income therefrom shall be included in the income of the grantor. The court held that the trust was not one such as described by section

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus in computing the net income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

166 of the 1928 Act, "as the grantor did not have, at any time during the taxable year 1929, or at any other time, * * * the power to revest in himself title to any part of the corpus of the trust." The court further held that the trust instrument granted an irrevocable estate for years and that the income therefrom was subject to the unfettered command of the grantee and was not taxable to the grantor. The principle of law there announced is that where a trust for a period of years terminates by the terms of the trust instrument, with title to the corpus thereupon revesting in the grantor, such termination is not under the exercise, at any time, of a "power to revest" reserved to the grantor either alone or in conjunction with any person not a beneficiary of the trust, within the meaning of section 166 of the 1928 Act. Since the language in section 166 of the Revenue Act of 1934, applicable in the instant case, differs from that in section 166 of the 1928 Act only by the omission of the words "during the taxable year", and since in the *First National Bank of Birmingham* case the trust did terminate during the taxable year there in question, clearly, the principle there announced is applicable in the instant case.

In neither the original nor the supplementary declaration of trust was any power of revocation reserved to the petitioner or anyone else. The trust could be terminated only upon the happening of one of the three events specified in the original and supplementary declarations, viz., the death of the grantor or of the beneficiary, or the termination of a five-year period from April 8, 1931, and petitioner, the grantor, had no control over the happening of such events. The trust constituted the grant of an estate for years and the beneficiary became the owner of an equitable interest in the corpus, *Blair* v. *Commissioner*, 300 U. S. 5. Since section 166, *supra*, deals only with revocable trusts, and since the trust here in question was not, under the terms of the instruments creating it, revocable at any time during the period fixed for its duration, that section is not applicable in the instant case. *Phebe Warren McKean Downs*, 36 B. T. A. 1129. Cf. *William E. Boeing*, 37 B. T. A. 178.

The trust here in question was not established to discharge a legal obligation of the grantor or to pay premiums for insurance on the grantor's life. Thus the principles laid down in such cases as *Burnet* v. *Wells*, 289 U. S. 670, and *Douglas* v. *Willcuts*, 296 U. S. 1, are not applicable here.

The instruments establishing the trust did not provide for the distribution of any income from the trust to the grantor and none was so distributed. Those instruments, in defining the trustee's duties and powers, gave the trustee the power to determine whether any property or money received or held in trust should be treated as

capital or income, but, when considered with the instruments as a whole and the construction given them by the parties, such power may not, in our opinion, be construed as a provision for the accumulation of any income from the trust for future distribution to the grantor. The trust instruments specifically provided that the income should be paid to Helen Martin Wood, the beneficiary, as and when received by the trustee, and all the income was in fact so paid to her and none was distributed to the grantor or accumulated. There is no provision in the trust instruments nor any evidence in the record that it was the intention of the grantor that the income, or any part thereof, was to be used in the discharge of petitioner's marital duty to support his wife, the beneficiary of the trust, and it may not be presumed that the petitioner's gift to his wife was to be used to effectuate that purpose. *Shanley* v. *Bowers*, 81 Fed. (2d) 13; *Henry A. B. Dunning*, 36 B. T. A. 1222.

While the petitioner, as trustee, had the power to manage the corpus of the trust, the trust instruments made no provision for his control over the use of the income from the trust and there is no evidence of record that he attempted to exercise any such control. The petitioner did not own that income nor did it remain his in substance, for, under the terms of the grant and for the specified period of time, the beneficiary had the unfettered right to receive and use the income from the trust corpus. *United States* v. *First National Bank of Birmingham, supra.*

In our opinion, section 167, *supra*, is also clearly not applicable in the instant case. Cf. *Henry A. B. Dunning, supra; Phebe Warren McKean Downs, supra; Kaplan* v. *Commissioner*, 66 Fed. (2d) 401; *William E. Boeing, supra; E. E. Black*, 36 B. T. A. 346. In *Warren H. Corning*, 36 B. T. A. 301, the income of the trust was accumulated and there was reserved to the grantor a vested power to revoke and amend the trust, and that case is thus clearly distinguished from the instant case on the facts. In *William Lea Taylor*, 37 B. T. A. 875, the trust instrument specifically provided for certain accumulations of income and the distribution of corpus and accumulated income to the grantor upon the termination of the trust, and also reserved in the grantor the power to terminate the trust upon the happening of certain events, which clearly distinguishes that case from the instant case on the facts.

The respondent erred in including the $8,750 income from the trust in question in the petitioner's taxable income for the year 1934.

*Decision will be entered under Rule 50.*