FREDERICK K. BARBOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91943. Promulgated May 19, 1939.

*Charles S. McVeigh, Esq.*, and *Arthur A. Brody, C. P. A.*, for the petitioner.

*Frank S. Schlosser, Esq.*, for the respondent.

---

OPINION.

HILL: Income tax deficiencies of $48,989.82 and $66,115.45, respectively, for 1934 and 1935 are at issue in this proceeding. The petitioner alleges that the respondent erred (a) in his computation of the tax for 1934 by adding an item of $92,821.54 to gross income and disallowing interest deduction in the amount of $455, and (b) for 1935 by adding $131,455.67 to gross income, and disallowing interest and tax deduction claims totaling $4,368.80. In a stipulation of facts upon which this cause is submitted for our decision the petitioner concedes that respondent correctly denied the deduction claims as to both years; and, as to such items the respondent is hereby sustained. The only question left for our decision relates to the income items.

The parties hereto filed two stipulations of facts and a number of exhibits in our record, which we include in our findings by reference. For specific details, where material, we refer to these stipulations and exhibits.

The petitioner is an individual residing at Norfolk in the State of Connecticut. On October 29, 1931, the petitioner executed a deed of trust whereby he conveyed to the trustees a number of large groups of capital stock of various corporations. No power to revoke or change the terms of the trust, or exercise any control over the trust property or its management, was reserved by the petitioner. The trustees were given full control over the corpus of the trust and directed to pay its net income in monthly or quarterly installments as follows: Four-tenths of the net to petitioner's wife, Helen Carrere Barbour; one-tenth to each of three minor children; and three-tenths to the mother of petitioner's wife. The trust was to terminate upon (1) the death of the grantor, (2) the death of Helen Carrere Barbour, or (3) when the latter should arrive at the age of 34 years, 11 months and 12 days, it being understood that the latter was 33 years of age on January 19, 1931, which would make the trust terminate December 31, 1932. The trust instrument provided in effect that (1) should any beneficiary, other than petitioner's wife, die during the life of the trust, the trust income payable to such deceased beneficiary would be payable to petitioner's wife; (2) should the trust terminate because of the petitioner's death, the trustees were directed to deliver the trust estate to such person or persons and in such shares, proportions, or amounts as petitioner shall designate in his will, or in default of will, to petitioner's surviving children or their heirs; (3) should the trust terminate for any reason other than petitioner's death, the estate was made returnable to him absolutely.

By successive agreements made March 11, 1932, and December 15, 1934, the life of this trust was extended to December 31, 1940, provided it was not terminated prior thereto by reason of the death

912

of either the grantor (petitioner) or his wife, Helen Carrere Barbour.

On November 20, 1934, the petitioner executed a second deed of trust to the same trustees, for the same beneficiaries, and upon terms in all essentials identical with those set out in the trust just referred to above. The corpus of this trust (originally 830 shares of common stock of the United Shoe Machinery Corporation) was increased by petitioner on December 15, 1934, by an assignment to the trustees of other corporation securities. On the same date, by separate agreement, the life of this latter trust was extended and made to expire December 31, 1940, provided it is not terminated prior thereto by reason of the death of either the grantor or his wife, Helen Carrere Barbour. Since the execution of the trust, the trustees have administered them according to their respective terms and have paid all income derived from them to the beneficiaries named in them. There is no direction, requirement or restriction in the trust instruments as to how any beneficiary thereunder may or shall apply the income received, or as to how such income may or shall be applied for or on behalf of any such beneficiary. None of the trust income was used for the maintenance and support of petitioner's wife or for the maintenance, support or education of his children, or to discharge any legal obligation of petitioner. None of the trust income was received by petitioner.

The respondent determined that the income from the trusts is taxable to petitioner for the years when earned. The addition made by respondent to petitioner's gross income in each of the taxable years represents, as to each year, the amounts earned by the trusts for the year concerned. Respondent contends that the trust incomes are taxable to petitioner under section 166 of the Revenue Act of 1934, which provides that where at any time the *power to revest title to trust property in the grantor*, under any one of several conditions enumerated, is *vested* in the grantor, the income of such part of the trust shall be included in computing the net income of the grantor.

Clearly there was no power vested in petitioner to revest in himself title to any part of the trust property during the terms of the trusts. The trusts were therefore irrevocable and section 166, *supra*, does not apply. *Meredith Wood*, 37 B. T. A. 1065; *Phebe Warren McKean Downs*, 36 B. T. A. 1129; *William E. Boeing*, 37 B. T. A. 178; *Henry A. B. Dunning*, 36 B. T. A. 1222. Cf. *Mutual States* v. *First National Bank of Birmingham*, 74 Fed. (2d) 360.

The following statement contained in the stipulation of the parties herein is the basis of an additional contention by respondent:

* * * In the case of Helen C. Barbour the amount shown on Exhibit 12 as the initial payment on February 19th, 1935 of $5,208.00 to the Travelers Insurance Company represents a premium paid by Helen C. Barbour on an insurance policy on life of petitioner, owned by Helen C. Barbour.

Exhibit 12, above referred to, is a part of the stipulation of facts herein and shows that the above amount of $5,208 was paid out of income received by Helen Carrere Barbour from the trusts herein. Respondent contends in his brief that this amount should be included in petitioner's income in computing his taxable net income for 1935 under section 167 of the Revenue Act of 1934 as interpreted in Treasury Regulations 86, article 167 (b). We think it clear that subdivisions (a) (1) and (2) of section 167, *supra*, have no application to the facts in relation to such insurance or to the facts as a whole in this proceeding. This leaves for consideration the question whether subdivision (a) (3) of that section applies herein. Section 167 (a) (3) is as follows:

(a) Where any part of the income of a trust—

\*      \*      \*      \*      \*      \*      \*

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contributions" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

There is no provision in the trust instruments whereby discretion or authority is lodged in the grantor or any other person to apply any part of the trust income to the payment of premiums upon policies of insurance on the life of the grantor. Respondent concedes that under no provision of the trust instruments is petitioner's wife required or directed to pay such premiums and that there is no evidence in the record to the effect that there was any agreement that she should so apply part of the income. There is no evidence in the record of any understanding or suggestion that the income should be so applied. Does such payment under the facts here make the amount thereof includable in petitioner's income for tax purposes?

Under the stipulation of the parties the premium in question was paid by petitioner's wife as the initial payment to the insurance company on a policy of insurance owned by her. She was not merely the beneficiary of the insurance; she was the owner of the insurance contract. In *Burnet* v. *Wells*, 289 U. S. 670, the Supreme Court said:

A policy of life insurance is a contract susceptible of ownership like any other chose in action. It "is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium." It is "an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums." *N. Y. Life Insurance Co.* v. *Statham*, 93 U. S. 24, 30, 23 L. Ed. 789; Vance on Insurance, pp. 260, 262, and cases there cited. \* \* \*

The contract of insurance on which Helen Carrere Barbour paid the premium in question was, it is true, a contract of insurance on the

life of the grantor of the trusts, the petitioner herein, but it was nevertheless her property. The petitioner was not the owner of the contract and had no property therein. The privilege of preserving the contract through the payment of premiums was that of Helen Carrere Barbour and in order to prevent the lapsing of the contract it was her obligation to pay such premiums. No benefit accrued to petitioner in the application of a part of the income of the trusts to the payment of the premium on the life insurance contract.

In *Burnet* v. *Wells, supra*, the trusts involved provided that the income therefrom should be devoted to the payment of premiums on the grantor's contracts of life insurance on his own life. In the case of *Henry A. B. Dunning, supra*, part of the income from the trusts was used by the beneficiary, grantor's wife, at the suggestion of the grantor to pay premiums on life insurance policies on his life which he had assigned to her, with no reserved power to change the beneficiaries. The trust instruments in that case contained no provisions as to how the trust income should be used and there was no formal agreement between grantor and his wife that she should pay the premiums on the insurance policies assigned to her. Those policies of insurance were contracts between the grantor and the insurance companies and were owned by him notwithstanding the assignment of the benefits thereunder to grantor's wife. The preservation of the contracts through the periodical payment of premiums was the privilege of the grantor and to prevent their lapsing the grantor had the obligation of either paying such premiums himself or providing for their payment by another. In that case the payment of the premiums by his wife discharged the grantor's obligations. In the *Dunning* case, we held that the payment of premiums out of income from the trusts was a benefit to the grantor, since the payment of premiums was necessary to prevent a forfeiture of the insurance contracts, and that the grantor exercised an element of control over that part of the trust income used for such payment.

In the case at hand there was neither any element of control by petitioner over the income from the trusts nor benefit to him from its use.

The basis of validity upon which the provisions of section 167 (a) (3), *supra*, rest is that a grantor of a trust has not divested himself of the right to the beneficial use of the trust property in so far as the income therefrom is applied for his benefit, or may be so applied in the discretion of the grantor or of one not having an interest in the disposition of such income adverse to the grantor.

The theory of the opinions in the *Wells* and *Dunning* cases is that the trust income was applied to the payment of premiums on the grantor's contracts of insurance on his own life to the benefit of the grantor in preserving his contracts and fulfilling his contract obli-

gations. The facts in those cases support that theory and bring them within the scope of section 167 (a) (3), *supra.* That theory is not applicable to the facts in the present proceeding.

The Supreme Court in *Burnet* v. *Wells, supra,* recognized the distinction between trusts for the preservation of policies of insurance and those where the trust income may be expended by the beneficiaries without restraint and without the imposition of the grantor's will upon the use of such income. The Court, however, refrained from expressing an opinion as to the principle applicable to the latter class of cases because that question was not before it. The facts in the present case bring it within such latter class. To tax petitioner on that part of the trust income applied to the payment of the insurance premium herein would be to tax one person upon the income of another or to measure the tax of one person not by his own income, but, in part, by the income of another. It is our opinion that it was not the intent of Congress to authorize such a tax in section 167 (a) (3), *supra,* and, moreover, that the authorization of such a tax is not within the power of Congress. Cf. *Hoeper* v. *Tax Commission,* 284 U. S. 206.

For the reasons assigned, we hold that the additions to petitioner's gross income, for the taxable years, of any part of the trust income were erroneous.

The plea in estoppel which the petitioner alternatively urged against respondent, under facts which we have not seen fit to set forth in these findings, is without point or importance in view of our decision, and therefore will not be considered.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MELLOTT and DISNEY concur only in the result.

---

MURDOCK and OPPER, concurring: No part of the "income of a trust" was "applied to the payment of premiums." The trust income was paid to the wife and became hers, she applied her own funds to the payment of the premium even though it was money *from* the trust. Congress never intended to tax such an amount to the grantor. In *George Washington, Sr.,* 36 B. T. A. 74, 81, we said:

> There was no provision of this trust, nor was there any agreement, that any of the income of the trust should be used to pay premiums on life insurance covering the life of petitioner. Cf. *Burnet* v. *Wells, supra.* It is immaterial that Lina may have used some of the income from the trust to pay a part of the premiums.

The irrelevant and conceivably perilous ground adopted by the majority could thus have been avoided. Any distinction in the ap-

plication of section 167 (a) (3) between policies taken out by the grantor and policies taken out by others on the grantor's life is fallacious. Policies issued, for example, in the name of the trustees, for the protection of beneficiaries of the trust, the objects of the grantor's concern, if paid for out of the trust income, would appear to be as clearly within the express terms and obvious intent of section 167 (a) (3) as those of the grantor himself. In *Alfred F. Pillsbury*, 19 B. T. A. 1229, some of the policies were issued, after the trust was established, "in favor of a trustee." The trustee was the beneficiary and had all rights of ownership including surrender and loan privileges and all option benefits under the policy. We rejected the argument that the grantor, having no rights or benefits, was not chargeable with income of the trust applied to payment of the premiums, and held that such income was nevertheless taxable to him.

It is to be assumed that the majority opinion does not purport to lay down a contrary principle. Nevertheless, its language is so broad in this respect that we are unable to concur in the opinion as written.

STERNHAGEN, LEECH, and ARNOLD agree with the above.