ARTHUR STOCKSTROM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1238.    Promulgated April 26, 1944.

*W. R. Gilbert, Esq.*, for the petitioner.
*Richard A. Jennings, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: If petitioner had owned life insurance policies written upon his life and then assigned them to a trust which he created for the purpose of using the trust income for the payment of the premiums thereon, the trust income so used would clearly have been

taxable to petitioner under section 167 (a) (3) of the Internal Revenue Code.[1] *Burnet* v. *Wells*, 289 U. S. 670.

Here the petitioner created a trust of which his children, the natural objects of his parental solicitude, were the beneficiaries, and specifically provided that the trustee should have the right to purchase life insurance upon petitioner's life and use the principal or accumulated income of the trust for the payment of premiums upon such policies. This trust was created on December 23, 1936. On December 29, 1936, the trustee applied for a life insurance policy upon the life of petitioner, and such a policy insuring the life of petitioner for $100,000 was issued to the trustee on December 31, 1936. The annual premiums due upon this policy during the taxable years were paid from the accumulated income of the trust.

Does the fact that the insurance upon petitioner's life was taken out directly by the trustee after the creation of the trust instead of by the petitioner himself before the creation of the trust, being later assigned to it by him, prevent the taxation to petitioner of the trust income used for the payment of premiums under section 167 (a) (3)? We are of the opinion that it does not. See *Alfred F. Pillsbury*, 19 B. T. A. 1229; affd., 67 Fed. (2d) 151; *Frank C. Rand*, 40 B. T. A. 233; affd., 116 Fed. (2d) 929; and concurring opinion in *Frederick K. Barbour*, 39 B. T. A. 910, 915; reversed on other grounds, 122 Fed. (2d) 165.

In order to hold otherwise, it would be necessary to read into the unequivocal provisions of the statute a nonexistent limitation; and such a limitation would open such a loophole in the application of the statute as to completely defeat the legislative purpose. That purpose is to prevent the avoidance of tax by the allocation of income through a trust device to the payment of life insurance premiums, which are universally recognized as a normal expense of protecting dependents but which are personal, as distinguished from business, expenses, and are therefore not deductible from gross income. Whether the trust antedated the policies, or the policies antedated the trust, seems as irrelevant in construing the legislative purpose as any question concerning the chronological priority of the egg and the chicken. The relevant fact is that the income of a trust created

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

  (a) Where any part of the income of a trust—

   *       *       *       *       *       *       *

   (3) is, or in tne discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

by the petitioner for the benefit of his children is authorized by him to be used and is used for the payment of premiums upon policies of insurance on his life, ultimately payable, through the trust, to the children. Under the plain language of the statute the trust income so used is taxable to petitioner.

Our holding upon this issue does not, we think, contravene the due process clause of the Fifth Amendment.

Any controversy on the boundaries of legislative power, Cardozo, J., pointed out, "must be dealt with in a large way, as questions of due process always are, not narrowly or pedantically, in slavery to forms or phrases" (*Burnet* v. *Wells, supra*, pp. 677, 678). In the present case, the policies were not the contracts of the settlor as in *Burnet* v. *Wells*, but those of the trustee. In the *Wells* case undoubtedly the Court emphasizes the fact that the trust income is used for the satisfaction of the settlor's contractual obligations; but it also emphasizes the peace of mind of the settlor which flows from his adopted method of providing for his children and dependents. It upholds the statutory provision, since in general it would apply only to trusts for the care of dependents. Cases beyond the line are left for future determination: "The exceptional, if it arises, may have its special rule." (*Ibid*, p. 681.)

The petitioner-settlor here allowed the insurance to be laid on his own life, to increase the investment range of a trust which he had created. The proceeds of the policies so purchased would ultimately benefit his own children. The peace of mind which such a settlement would bring to the settlor would not be any different in kind from the repose he would find in having the trust pay premiums on policies which he still nominally owned, or had owned and later assigned. The trust was specifically authorized to invest its income in such policies on petitioner's life. Within eight days after its creation, the trust acquired such a policy. The guardian hand of the father and settlor reaches out here with every premium payment to protect his children, the beneficiaries, by safeguarding the trust income meant ultimately for them. The trustee opposes no adversary force to the settlor's will, but becomes the willing utensil of his power. It is unnecessary in these circumstances to analyze or define under local law the settlor's legal or equitable interest in a contract which he has authorized to be brought into being for the benefit of persons whose care and protection are the natural objects of his paternal desire and which is paid for by the income from property which he has given to the trust. We can not say in these circumstances that this case is so exceptional as to put it beyond the reach of legislative power and is not covered by the principle set out in the *Wells* case,

*supra.* That that case did not in its facts go so far in no way vitiates its principle, which still germinates and lives in a different soil and somewhat different circumstances. See *Frank C. Rand, supra,* p. 238.

Reviewed by the Court.

*Decision will be entered under Rule 50.*