## COMMISSIONER OF INTERNAL REVENUE v. MORTON.

### No. 6964.

Circuit Court of Appeals, Seventh Circuit.

Jan. 12, 1940.

Rehearing Denied Feb. 5, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. P. Wenchel, Newton K. Fox, and John W. Smith, Sp. Assts. to Atty. Gen., for petitioner.

Robert V. Jones, of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals presents the question whether or not the income for the year 1934 of two trusts was taxable to the grantor. The Board held that the income of the trusts was not to be included in computing the grantor's gross income because power to revoke the trusts was in a person having an interest adverse to that of the grantor so that section 166 of the Revenue Act of 1934, 26 U.S.C.A. § 166, was not applicable, and the income was not held for or distributable to the grantor within the meaning of section 167 of the same Act, 26 U.S.C.A. § 167.

The facts were stipulated by the parties. Between the years 1925 and 1931, the husband of the taxpayer took out a series of eight policies insuring his life for $275,000. The taxpayer was designated as beneficiary of all of the policies in case of his death, and the policies also provided that she alone had the right to the loan or cash surrender value of each, and the right to change the beneficiary.

In February, 1933, the taxpayer entered into a trust agreement with the Bankers Trust Company of New York City, for the purpose of creating a trust fund, the income of which was to be used to pay the premiums on the eight policies on the life of her husband. Under the terms of this agreement, the Trust Company was to act as trustee, and the trust was to terminate upon the death of the last survivor of her husband, her daughter, and herself. It was also subject to termination by the husband by delivery to the trustee of a written memorandum stating that he intended to terminate on the next succeeding first of January, followed by delivery by him on that date to the trustee of a second written memorandum that he was thereby terminating it. Upon such termination, the trustee was obligated to deliver to the husband all accumulated income of the trust estate and all investments and reinvestments thereof, and to the taxpayer-grantor all the remainder of the trust estate if she were then living, and if not, the entire trust estate was to be delivered to the husband.

If the trust had not been terminated prior to the death of the husband, and if it continued for three years following his death, then the grantor was entitled to terminate it at any time thereafter, by written notice to the trustee, and after her death, the daughter was to be entitled to terminate by written notice to the trustee. If the trust were terminated by the grantor, the trustee was to deliver all accumulated income to-

gether with the investments thereof to the daughter, and the remainder of the trust estate to the taxpayer. If it were not terminated until after the death of the grantor, then the entire trust estate was to be delivered to the daughter. The trust was not otherwise revocable. To carry out the terms of this agreement the taxpayer delivered to the trustee certain stocks and bonds, the income of which aggregated $12,171 for the year 1934.

In March, 1934, the husband created a trust similar in all respects to that created by the taxpayer except that the positions of the husband and wife in their relation to it were reversed. This trust was also intended to provide for payment of premiums on two policies of life insurance, this time, on the life of the taxpayer, aggregating $50,-000, and payable upon her death to her husband, the assured under the policies involved in the trust in suit.

In August, 1934, the taxpayer and the Manhattan Trust Company entered into a trust agreement to provide a fund for the payment of premiums on another policy insuring the life of the taxpayer's husband, this one for $50,000, then payable to the taxpayer as beneficiary. The terms of this trust agreement differed in several respects from the one entered into between taxpayer and the Bankers' Trust the year before. It provided that the taxpayer was to have the policy modified by having it made payable to the trustee instead of to herself; after payment of premiums and the retention of such remainder of the income as seemed advisable to insure payment of subsequent premiums, the trustee was to pay the balance of the income to the taxpayer; the taxpayer and/or her husband, the insured, were entitled to any cash surrender or loan value of the policy, and they reserved to themselves the right to borrow on, assign or pledge the policy, and to change the beneficiary thereof, and to any other options which might exist under the policy; the trustee was authorized to collect the proceeds of the policy upon its maturity by the death of the insured, which proceeds were to be paid over to the taxpayer, if she were then living, and if not, then to her daughter, if living, or to the issue of the daughter, if any, if the daughter predeceased the taxpayer, and if no issue, then the proceeds were to be equally divided between Princeton University, and the Trustees of the Morton Arboretum; the trust was subject to termination at any time by delivery of an instrument in writing by the husband to the trustee, which was thereupon to deliver to the husband any income of the trust estate then on hand, and to the grantor, the principal of the estate and the insurance policy; if not so terminated by action of the husband, the trust was to continue during his life, and until five years after his death, unless both the taxpayer and their daughter predeceased him, in which event, the trust was to terminate upon his death; upon termination after his death, the same disposition was to be made of the trust estate as was to be made if the trust were terminated during his life, except that the person entitled to receive the principal was also to receive the income. The trust was revocable only as provided by the instrument itself. To carry out its provisions, the taxpayer delivered to the trustee certain stocks and bonds, the income of which was expected to amount to about $2,400, approximately the amount necessary to cover the $2,228 annual premium due on the policy and pay the expenses of administering the trust.

During the tax year in question, the trustee collected dividends and interest from the stocks and bonds in the first trust estate amounting to $12,171, and in addition it also received capital net gains of $21,886, of which $7,288 was subject to income tax. During that year it expended $8,203 for premiums on the eight insurance policies; retained $250 for its own fees; and paid $25.56 for income taxes for the year 1933. The balance was accumulated in accordance with the provisions of the trust agreement.

The Commissioner contended before the Board and before this court that the income from the two trusts should be taxed to the grantor either under the provision of section 166 of the Revenue Act of 1934,[1] or

---

[1] "Sec. [§] 166.  *Revocable trusts*

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor."

section 167 of the same Act.[2] The Board ruled against the Commissioner as to the applicability of each section. It held that because the husband was entitled to receive the corpus of the trust estate in the event that the taxpayer predeceased him, and because he was entitled to receive the accumulated income upon termination of the trusts during his lifetime, he did have a substantial adverse interest, even though that interest was contingent in nature, and that, therefore, the grantor could not be taxed for the income of the trust.

It is obvious that the income of these trusts was devoted solely to the grantor's own uses. She was the sole beneficiary of the eight policies involved in the first trust; she alone had the right to change the beneficiary; she alone was entitled to their cash surrender or loan value. With respect to the second trust, her title was somewhat less direct, but the policy was, in fact, payable to her, even, though indirectly through the medium of the trustee which was obligated by the terms of the trust to pay the proceeds to her upon collection, if she were then living, and if she were not, it was her disposition of the proceeds which was to control, by the terms of the trust agreement. Thus, although by the provisions of the two trust agreements, the taxpayer divested herself of the control of the trust estate and of its income, the fact remains that that income was expended solely for her own purposes, and the property upon which it was expended, namely, the insurance policies, belonged to her and her alone, and, in the case of the eight covered by the first trust, even before their maturity by the death of the insured.

Section 167 has been construed to make possible the taxation of trusts to the grantor where the income was to be devoted to the discharge of an obligation of the grantor, whether such obligation was imposed by operation of law or by contract. See Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 63, 101 A.L.R. 391; Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390, reversing 2 Cir., 76 F.2d 507; Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. 389, reversing 7 Cir., 75 F.2d 702. In the Willcuts case, the trust was irrevocable. However, the Court did not consider that fact controlling. In determining that the grantor was taxable on the income of the trust there involved, the Court said: "We do not regard the provisions of the statutes as to the taxation of trusts, fiduciaries and beneficiaries * * * as intended to apply to cases where the income of the trust would otherwise remain, by virtue of the nature and purpose of the trust, attributable to the creator of the trust and accordingly taxable to him. These provisions have appropriate reference to cases where the income of the trust is no longer to be regarded as that of the settlor, and we find no warrant for a construction which would preclude the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it. * * * Nor are the provisions of the statutes * * * defining instances in which the grantor remains taxable, as in case of certain reservations for his benefit or provisions for the payment of premiums upon policies of insurance on his life, to be regarded as excluding instances not specified, where in contemplation of law the income remains in substance that of the grantor. No such exclusion is expressed and we see no ground for implying it."

In view of this ruling we are of the opinion that even though a literal interpretation of section 167 might tend to establish the immunity of the grantor from the tax, no such literal interpretation is to be accorded the section. Looking to the practical

2 "Sec. [§] 167. *Income for benefit of grantor*

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes * * * relating to the so-called 'charitable contribution' deduction);

then such part of the income of the trust shall be included in computing the net income of the grantor."

facts, we find that here the bulk of the income did remain, in contemplation of law, in substance, that of the grantor, used to purchase property for herself. We think it could hardly be argued, in view of the teaching of the Willcuts case, that if the taxpayer created a trust for the purpose of paying installments provided for by contract on the purchase of a house or any other property, title to which was taken in the name of or for the benefit of the grantor, the income would not be taxable to the grantor. We see no difference in principle between the property rights involved in the house and in the insurance policies.

It is also to be noted that the reversionary interest in the corpus of the estate remained in the taxpayer, and even though the accumulated income was to be the property of the husband, we think such segregation of income was not enough to render the taxpayer immune from taxation. See DuPont v. Commissioner, 289 U.S. 685, 53 S. Ct. 766, 77 L.Ed. 1447.

We therefore hold that the decision of the Board of Tax Appeals must be, and it is hereby reversed.