MARGARET R. PHIPPS, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83863. Promulgated June 28, 1940.

330

*David A. Reed, Esq.*, for the petitioner.
*Angus R. Shannon, Jr., Esq.*, for the respondent.

OPINION.

HARRON: The main question is whether, in the taxable years, petitioner was taxable on the entire net income of a funded insurance trust which was created by petitioner for the purposes of paying the annual premiums on three policies of insurance on the life of her husband, and of using the proceeds of the policies after her husband's death to pay the inheritance and estate taxes on her share of his estate.

The facts show that in the taxable years part of the income of the trust was used to pay the premiums on the policies of insurance on the life of petitioner's husband and the excess of the net income of the trust was added to the corpus of the trust.

Respondent determined that in the taxable years the entire net income of the trust was taxable to petitioner. To support his determination respondent relies, both in the deficiency notice and in his brief, on section 167 (a) (1) of the Revenue Acts of 1932 and 1934, the pertinent provisions of which are set forth in the margin.[1]

While the excess of net trust income which was added to trust corpus clearly was *accumulated* within the meaning of section 167 (a) (1), petitioner contends that the trust income which was used to pay the premiums on the policies of insurance on the life of petitioner's husband was not *accumulated* within the meaning of that section. Petitioner contends that the Board's decisions in *Lucy A. Blumenthal*, 30 B. T. A. 591; appealed and reversed on another issue, 76 Fed. (2d) 507; reversed per curiam, 296 U. S. 552; *Gail H. Baldwin*, 36 B. T. A. 364; and *Sophia P. O. Morton*, 38 B. T. A. 419, are controlling. However, the *Blumenthal* and *Baldwin* cases are distinguishable because in each of those cases none of the proceeds of the collection of the policies was to be distributed to or for the direct benefit of the grantor at any time, and the Board's decision in the *Morton* case recently has been reversed by the Circuit Court in *Commissioner* v. *Morton*, 108 Fed. (2d) 1005. It should be noted that respondent has submitted for his brief here a copy of the brief submitted by him to the Circuit Court in the *Morton* case.

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

 (a) Where any part of the income of a trust—

 (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; * * *

 \* \* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

While the facts in *Commissioner* v. *Morton*, *supra*, are somewhat different from the facts here, the Circuit Court's decision in the *Morton* case is, in our opinion, controlling. In the *Morton* case the taxpayer created two funded insurance trusts to pay the premiums on policies of insurance on the life of her husband. The taxpayer was named as the beneficiary in the policies held in the first trust, and the trustee was named as the beneficiary in the policy held in the second trust and was directed to pay the proceeds of the collection of the policies on the death of the taxpayer's husband to the taxpayer or to her daughter if the taxpayer predeceased her husband. In the policies held in the first trust the taxpayer retained the right to change the beneficiary and the right to the cash surrender or loan value, and in the policy held in the second trust the right to change the beneficiary and the right to the cash surrender or loan value were reserved in the taxpayer and/or her husband. The Circuit Court held that the taxpayer was taxable on the income of the two trusts which was used to pay the premiums on the policies of insurance, under section 167 of the Revenue Act of 1934.

In its decision in the *Morton* case the Circuit Court relied to a great extent upon the decision of the Supreme Court in *Douglas* v. *Willcuts*, 296 U. S. 1, and stated in part as follows:

* * * Looking to the practical facts, we find that here the bulk of the income did remain, in contemplation of law, in substance, that of the grantor, used to purchase property for herself. We think it could hardly be argued, in view of the teaching of the *Willcuts* case, that if the taxpayer created a trust for the purpose of paying installments provided for by contract on the purchase of a house or any other property, title to which was taken in the name of or for the benefit of the grantor, the income would not be taxable to the grantor. We see no difference in principle between the property rights involved in the house and in the insurance policies.

In our opinion, the same reasoning applies here. To be sure, petitioner was under no contractual obligation to pay the premiums on the policies of insurance, which she had taken out on her husband's life and on which she had paid the first annual premiums.[2] However, the use of the income of the trust to pay the premiums maintained the policies during the life of petitioner's husband, and on his death the trust assets, including the proceeds of the collection of the policies, were to be used to pay the inheritance and estate taxes on petitioner's share of her husband's estate. The reasonable inference is, in the absence of any evidence to the contrary, that the maintenance of the policies through the use of trust income resulted in a substantial economic benefit to petitioner. Moreover, one year after the death of petitioner's husband, the trust assets remaining after the payment of the inheritance and estate taxes

---

[2] Vance, Handbook on the Law of Insurance, 2d ed. (1930), pp. 260, 261.

on her share of her husband's estate were to be transferred to petitioner absolutely. Through the use of the income of the trust to pay the premiums on the policies of insurance, petitioner enjoyed such a substantial economic benefit that it is both reasonable and just to treat her as the owner of the trust corpus for purposes of income taxation, as was concluded by the court in the *Morton* case. Cf. *Douglas* v. *Willcuts, supra; Burnet* v. *Wells,* 289 U. S. 670; *Helvering* v. *Clifford,* 309 U. S. 331.

Furthermore, it should be pointed out that the payment of the annual premium on a policy of life insurance ordinarily results in an increase in the surrender value of the policy.[3] Here this would mean an increase in the value of the trust corpus and, in substance, would produce the same result as if the trust income had been added directly to the corpus of the trust. It should be pointed out, also, that an insurance company sets aside and accumulates a portion of the annual premiums paid on a policy of insurance as a reserve fund for the policy.[4] "Common sense interpretation" has been stated to be the safest rule to follow in the administration of the income tax laws, *Rhodes* v. *Commissioner,* 100 Fed. (2d) 966, 969; and, in our opinion, the trust income which was used to pay the premiums on the policies of insurance on the life of petitioner's husband clearly was *accumulated* within the meaning of section 167 (a) (1).

Petitioner contends further that the trust income which was used to pay the premiums on the policies of life insurance and the excess of net income which was added to trust corpus were not accumulated *for future distribution to the grantor* within the meaning of section 167 (a) (1). There is no merit in petitioner's contention. The trust agreement contains definite provisions for future distribution to the petitioner of the trust assets, including the proceeds of the policies of life insurance and the excess of the net income of the trust which was added to trust corpus. Cf. *William E. Boeing,* 37 B. T. A. 178, 185; appealed and reversed on another issue, 106 Fed. (2d) 305. On the death of petitioner's husband, the trust assets were to be used to pay the inheritance and estate taxes on petitioner's share of her husband's estate. If petitioner was required by law to pay any of the inheritance or estate taxes on her share of her husband's estate, sufficient cash funds to pay the taxes were to be distributed directly to petitioner. In any event, it is reasonable to infer that the use of the trust assets to pay the taxes would result in an economic benefit to petitioner, which would be, in

---

[3] Bogert, Funded Insurance Trusts and the Rule Against Accumulations, 9 Cornell Law Quarterly (1924) 113, 129.

[4] Vance, Handbook of the Law of Insurance, 2d ed. (1930), pp. 27, 50, 54. Jarmon, Wills, 6th ed. (1893), vol. I, pp. 311, 314.

substance, the equivalent of a distribution directly to her.[5] Moreover, the trust assets remaining after payment of the estate and inheritance taxes on petitioner's share of her husband's estate were to be transferred to petitioner absolutely one year after the date of her husband's death. While it is true that the trust assets would not be used for petitioner's benefit if she predeceased her husband, the fact remains that, in the taxable years, under the definite provisions of the trust agreement the trust income which was used to pay premiums on the policies of life insurance and the excess of the net trust income which was added to trust corpus were accumulated for future distribution to the petitioner within the meaning of section 167 (a) (1) of the Revenue Acts of 1932 and 1934. Cf. *Everett D. Graff*, 40 B. T. A. 920; *Lolita S. Armour*, 41 B. T. A. 777.

The cases cited by petitioner in support of her contention that the trust income which was used to pay premiums on the policies of life insurance and the excess of net trust income which was added to trust corpus were not accumulated *for future distribution to her* are distinguishable. In *John Edward Rovensky*, 37 B. T. A. 702, it was held that a "power" to revest was not *vested* in the grantor within the meaning of section 166 of the Revenue Act of 1934. In *William E. Boeing, supra*, there was no definite provision for future distribution to the grantor of the accumulated trust income and there was only a bare possibility that the accumulated trust income might revert to the grantor. In *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190, there was no provision for future distribution to the grantor of any of the accumulated trust income. In *Preston R. Bassett*, 33 B. T. A. 182, and in *Arthur J. Morris*, 33 B. T. A. 241, capital gains from the sale of trust assets, which were added to trust corpus by operation of law, and not by the exercise of the grantor's discretion as trustee, were held not to be income taxable to the grantor under section 167 of the Revenue Act of 1928, which was different in several material respects from section 167 of the Revenue Acts of 1932 and 1934.

Therefore, respondent's determination that, in the taxable years, petitioner was taxable on the entire net income of the trust is sustained.

Reviewed by the Board.

*Decision will be entered for the respondent.*

MURDOCK dissents.

---

[5] The Report of the Ways and Means Committee on the Revenue Bill of 1924, 68th Cong., 1st sess., H. Rept. 179, p. 21, with respect to section 219 (h) (substantially the same for present purposes as section 167 of the Revenue Acts of 1932 and 1934) states in part as follows: "Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or *its use for his benefit.* The purpose of this subdivision of the bill is to stop this evasion." [Italics supplied.]