**PHIPPS v. HELVERING, Com'r of Internal Revenue.**

**No. 7758.**

United States Court of Appeals for the
District of Columbia.

Dec. 8, 1941.

Mr. Thomas P. Johnson, of Pittsburgh, of the bar of the State of Pennsylvania pro hac vice, by special leave of court, with whom Mr. David A. Reed, of Pittsburgh, Pa., was on the brief, for petitioner.

Mr. Edward Hopkins Hammond, Sp. Asst. to the Attorney General, with whom Messrs. Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., were on the brief, for respondent. Messrs. J. Louis Monarch, Sp. Asst. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and John M. Morawski, Sp. Atty., both of the Bureau of Internal Revenue, all of Washington, D. C., also entered appearances for respondent.

Before MILLER, VINSON and EDGERTON, Associate Justices.

MILLER, Associate Justice.

The following facts, found by the Board of Tax Appeals, are undisputed: Petitioner is a resident of Denver, Colorado. She filed her Federal income tax return for each of the taxable years with the Collector of Internal Revenue for the District of Colorado. By a trust agreement entered into on or about February 27, 1923, between petitioner, as grantor, and The International Trust Co., as trustee, petitioner created an irrevocable funded insurance trust. Petitioner transferred to the trustee bonds of the par value of $185,000, and caused three policies of insurance on the life of her husband, Lawrence C. Phipps, to be issued to the trustee. The face amounts of the three policies totaled $145,000. Petitioner made the application for each policy, paid the first annual premium on each policy, and named the trustee as the beneficiary in each policy. The trustee was to use the income from the trust estate to pay the annual premiums on the three policies. If the income from the trust estate was insufficient to pay the premiums, the trustee was directed to use so much of the corpus of the trust estate as was necessary to pay the premiums in full. If the income from the trust estate was more than sufficient to pay the premiums, the trustee was directed "to accumulate the excess of income and add the same to the corpus of the trust fund or estate, and thereupon to invest and keep the same invested pursuant to the terms hereof as a part of the corpus of said trust fund." On the death of petitioner's husband, "leaving the grantor surviving him

* * *," the trustee was to use the proceeds of the policies "together with such bonds and securities or other property as may then be a part of the trust estate hereby created and the accumulated income, if any, therefrom * * *." to pay: "* * * all inheritance, succession, transmission, estate and transfer taxes or death duties which may be assessed or levied upon or chargeable against or in connection with the distributable share or portion of the estate of the said Lawrence C. Phipps, or other interest therein, which may be inherited by or devised or bequeathed to the grantor from the general estate of the said Lawrence C. Phipps or under the provisions of his will or otherwise, or for which said grantor as an heir at law or beneficiary of said estate may be liable or required or permitted to pay thereon or in connection therewith, or on the right to receive the same, or as a condition to the receipt thereof * * *." One year after the date of the death of petitioner's husband the trustee was to transfer to petitioner the trust assets remaining after payment of the taxes on petitioner's share of her husband's estate. If petitioner predeceased her husband, the trustee was to use the proceeds from the policies, together with the other trust assets, to pay "* * * all inheritance, succession, transmission, estate and transfer taxes and death duties which may be assessed or levied upon or chargeable against or in connection with the distributive shares or portions of the estate of Lawrence C. Phipps, or interests therein which may be inherited by or devised or bequeathed to the beneficiaries hereof other than the grantor, or for which said beneficiaries, other than said grantor, as heirs at law or beneficiaries of said estate may by law be liable or required or permitted to pay thereon or in connection therewith, or on the right to receive the same or as a condition to the receipt thereof * * *." The beneficiaries of the trust other than petitioner were six children of petitioner's husband. The trust assets remaining after payment of the taxes on their shares of their father's estate were to be divided into six equal shares, one of which was to be distributed to, or held in trust for, each of the six children as provided in the trust agreement. Likewise, if petitioner died within the period of one year from the date of her husband's death, the trust assets remaining after payment of the taxes on petitioner's share of her husband's estate were to be divided into six equal shares, one of which was to be distributed to, or held in

trust for, each of the six children as provided in the trust agreement. The trust agreement also provided in part as follows: "* * * The trustee, in the event that the inheritance or estate taxes hereinabove referred to are required by law to be paid by the beneficiaries hereof entitled to taxable interests in the estate of the said Lawrence C. Phipps, or by the executor, administrator or other personal representative of said estate, shall furnish to, or make available for use by, such beneficiaries, or personal representative, from the trust estate, including the proceeds of said insurance policies, cash funds with which to pay said inheritance or estate taxes as the same become due and payable as provided by law." The net income of the trust for income tax purposes was $10,084.03 in 1933 and $10,669.95 in 1934. The trustee used $9,164.05 in 1933 and $9,247.70 in 1934 to pay the premiums on the three policies of insurance. The trustee filed with the Collector of Internal Revenue for the District of Colorado a fiduciary return for each of the taxable years, in which it reported the entire net income of the trust. In the individual returns filed by petitioner for each of the taxable years she did not report any part of the net income of the trust. Lawrence C. Phipps, husband of petitioner, is living.

The Board of Tax Appeals upheld the determination of the Commissioner that the petitioner was taxable on the entire net income of the trust for the two years of 1933 and 1934. On this appeal error is assigned on the ground that the Board erred (1) in holding that the income of the trust was being held or accumulated within the meaning of Section 167(a) (1) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Code, § 167(a) (1), and (2) in holding that such income was being held or accumulated for future distribution to the grantor within the meaning of that section. The applicable language of the section is as follows:

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor;

\* \* \* \* \* \*

then such part of the income of the trust shall be included in computing the net income of the grantor."

■ In answering the first question, it will be noted that the trustee, pursuant to the instructions contained in the trust indenture, used a portion of the income for each of the two years to pay the annual premiums on the three policies of insurance. It is not disputed that the balance of the income in each case was accumulated and added to the corpus of the trust fund, also pursuant to the express language of the trust indenture. The question here presented, therefore, is whether there was an accumulation of that portion of the income which was used to pay the annual premiums on the insurance policies. In our opinion, the Board correctly held that as the payment of the annual premium on a policy of life insurance results in an increase of the surrender value of the policy, the value of the trust corpus is thus increased. The Board correctly pointed out that this increase of the trust corpus is proven also by the fact that an insurance company sets aside and accumulates a portion of the annual premiums paid on a policy of insurance as a reserve fund for the policy. Moreover, as the payment of the premiums is made for the express purpose of preserving that portion of the corpus of the trust which is represented by the face value of the insurance policies, and without the payment of which premiums the corpus of the trust would be destroyed,[1] it can be fairly said that in this sense, also, the use of the income for the payment of premiums constitutes an accumulation within the meaning of the section.

■■ In our opinion, the Board correctly decided that the accumulation of income came also within the meaning of that language of Section 167, which speaks of future distribution to the grantor.[2] Petitioner contends that (1) the Revenue Act must be read as a whole; (2) when it is uncertain, in the taxable year, who is to receive the accumulated income of a trust estate, the "trust is taxable to the trustee * * *" under Section 161(a) (1), which taxes to the trustee "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms

---

[1] Burnet v. Wells, 289 U.S. 670, 680, 53 S.Ct. 761, 77 L.Ed. 1439.

[2] Commissioner of Internal Revenue v. Morton, 7 Cir., 108 F.2d 1005. See White v. Higgins, 1 Cir., 1, 116 F.2d 312, 318.

of the will or trust;" (3) such income is not income held or accumulated for future distribution to the grantor; (4) hence, only accumulated income which is indefeasibly vested in the grantor can be taxed to the grantor under Section 167(a) (1). The Government answers that the grantor is liable for taxation upon the accumulated income, if she has the right to receive it at any time, or upon the happening of any specified event. In our opinion the Government's position is clearly correct.[3] We see no compelling or even persuasive reason for giving to Section 161 the comprehensive and controlling effect for which petitioner contends. And we see very good reasons for giving to Section 167 the effect for which the Government contends.

■ The purpose of Congress in enacting Section 167(a) (1) was to prevent evasion of taxes by the use of trusts which permitted distribution of their income for the use or benefit of the grantor.[4] "One can read in the revisions of the revenue acts the record of the Government's endeavor to keep pace with the fertility of invention whereby taxpayers had contrived to keep the larger benefits of ownership and be relieved of the attendant burdens."[5] If we were to read into Section 167 the restricted meaning contended for by petitioner, we would destroy its practical utility as a means for preventing tax evasion.[6] The interpretation of the section which appears in the Treasury Regulations is much more consistent with the legislative purpose and intent.[7] Section 167 of the 1934 Act has been several times reenacted without change; consequently, under the familiar rule, the regulation referred to has the force and effect of law,[8] so far as concerns the 1934 Act, and it is at least persuasive as to the meaning of the same section in the 1932 Act.

■ Neither are we impressed by petitioner's argument which is based upon cases interpreting Section 166.[9] The purpose of Congress in enacting that section was, apparently, the limited one of providing the formula for taxing income of a trust, with respect to the corpus of which, power, to revest title in the grantor, is vested either in the grantor alone, or in a person having no substantial adverse interest, or in both the grantor and such a person. Congress used appropriate limiting language to express that purpose. But there is no reason for imputing to Congress any intention to require that, in interpreting Section 167, consideration should be given either to the limiting language of Section 166 or to cases applying it. On the contrary, the broad language of Section 167 reveals the purpose to tax, to the grantor, all income of the trust accumulated for distribution to him, without the slightest reference to the vesting or revesting of title to the corpus. For this reason, in our opinion, the language of Jones v. Norris,[10] upon which petitioner relies, must be limited to Section 166. It is obviously inapplicable to Section 167. Similarly, the language of the District Court in Kent v. Rothensies,[11] upon which petitioner relied, must be disregarded,

[3] Kent v. Rothensies, 3 Cir., 120 F.2d 476, 478, 479; Kaplan v. Commissioner of Internal Revenue, 1 Cir., 66 F.2d 401, 402; Altmaier v. Commissioner of Internal Revenue, 6 Cir., 116 F.2d 162, 165, certiorari denied, 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138; Graff v. Commissioner of Internal Revenue, 7 Cir., 117 F.2d 247, 248, 249.

[4] Sen.Rep.No. 675, 72d Cong., 1st Sess. (1932) 34-35; H.R.Rep.No. 179, 68th Cong., 1st Sess. (1924) 21; Sen.Rep.No. 398, 68th Cong., 1st Sess. (1924) 25-26.

[5] Burnet v. Wells, 289 U.S. 670, 675, 676, 53 S.Ct. 761, 763, 77 L.Ed. 1439.

[6] Kent v. Rothensies, 3 Cir., 120 F.2d 476, 478.

[7] U.S.Treas.Reg. 86, Art. 167-1(b) (as approved by the Secretary, February 11, 1935): "The test of the sufficiency of the grantor's retained interest in the trust income, resulting in the taxation of such income to the grantor, is whether the grantor has failed to divest himself, permanently and definitively, of every right which might, by any possibility, enable him to have the income, at some time, distributed to him, actually or constructively. * * * * *

"If the grantor has retained any such interest in the income, such income is taxable to the grantor regardless of— * * * * *

"(5) the time or times of such distribution, whether within or without the taxable period, whether conditioned on the precedent giving of notice, or on the elapsing of an interval of time, or on the happening of a specified event, or otherwise; * * *."

[8] Taft v. Commissioner of Internal Revenue, 304 U.S. 351, 357, 58 S.Ct. 891, 82 L.Ed. 1393, 116 A.L.R. 346; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 115, 59 S.Ct. 423, 83 L.Ed. 536.

[9] Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796.

[10] 10 Cir., 122 F.2d 6, 9.

[11] D.C.E.D.Pa., 35 F.Supp. 291.

292

especially in view of the compelling language used by the Circuit Court of Appeals [12] in reversing that decision of the District Court.

It is not necessary to recapitulate the agreed facts in order to demonstrate the various eventualities under which the income of the trust may come to petitioner. It will be used for her benefit whether her ultimate receipt of it results from a vested or contingent right. We see here a continuing exercise by petitioner of a power to direct the application of her income along predetermined lines by keeping alive the contracts of insurance;[13] enjoying the full security of the accumulated income if she should outlive her husband and disposing of it by her personal direction, if she should predecease him. We think this brings the case clearly within the provisions of Section 167.

The Government urges, also, for the first time on this appeal,[14] that the income from the trust is taxable to the grantor under Section 22(a) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 487, 669. In view of our determination of the earlier question, it is not necessary for us to consider this contention.

Affirmed.

[12] 3 Cir., 120 F.2d 476, 478.
[13] Burnet v. Wells, 289 U.S. 670, 681, 682, 53 S.Ct. 761, 77 L.Ed. 1439.

[14] Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.