## COMMISSIONER OF INTERNAL REVENUE v. JERGENS.

### No. 10090.

Circuit Court of Appeals, Fifth Circuit.

May 13, 1942.

Joseph M. Jones and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Carl M. Jacobs and Wm. R. Seaman, both of Cincinnati, Ohio, for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

The Commissioner determined deficiencies in the payment of income taxes by Amy B. Jergens, now by divorce in 1940 and subsequent remarriage Amy B. Gallup, for the calendar years 1936, 1937 and 1938. For reasons stated in an unpublished opinion, the Board reversed the Commissioner and held there were no deficiencies. The material facts shown by the record are these.

On December 31, 1934, the taxpayer created a trust for her lifetime, with her then husband, Andrew Jergens, and the First National Bank of Cincinnati as trustees. She transferred to the trust two insurance policies on the life of Andrew Jergens, in the total amount of $335,000, and some 923 shares of stock. She was the beneficiary and owner of the insurance policies and obligated to pay the premiums. At her death all the trust property was to be transferred to her then husband, if living, then to the lawful issue of herself and husband, then to such children as might have been adopted by the husband, without

naming them. In default of any of these the property was to go to a charity foundation.

The trustees were authorized and directed to collect all the income of the trust estate, pay all the costs, taxes, charges and expenses of the trust, including compensation to the bank but not to the husband and, after deducting same, to pay the premiums on the life insurance policies, to pay to the grantor's aunt, Linda Brady, $1,700 annually and to pay the net income to the grantor in quarterly instalments so long as she should live.

Andrew Jergens was given the right to vote the stock and to withdraw any part of the trust estate, except the insurance policies, which could be withdrawn only with the consent of the grantor. He had the right to terminate the trust but the grantor could not do so.

The trustees carried out the instructions of the grantor and filed fiduciary returns. The taxpayer received no income from the trust in 1936. She filed returns for the years 1936, 1937 and 1938. The Commissioner added to the taxpayer's income for those years the amounts paid for premiums on the insurance policies and determined deficiencies accordingly.

In substance, the Board held that as Section 167(a) (3) expressly designates insurance on the grantor's life, a policy on the life of any other person is excluded; and that the taxpayer, having assigned the insurance absolutely to the trustees, her duty to pay the premium was ended.

The Commissioner contends the taxpayer had an economic interest in the policies and the payments of the premiums were accumulated for her future benefit and taxable to her under the provisions of Sections 22 and 167 of the Revenue Acts of 1936 and 1938.

The Revenue Acts of 1936 and 1938 provide as follows: Section 22 generally defines gross income, 26 U.S.C.A. Int.Rev. Acts pages 825, 1008. Section 167(26 U.S.C.A. Int.Rev.Code § 167) provides:

"§ 167. Income for benefit of grantor.

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (* * *);

then such part of the income of the trust shall be included in computing the net income of the grantor."

In support of his theory the Commissioner relies principally on Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439, and Phipps v. Helvering, App.D.C., 124 F. 2d 288, which involved similar provisions of other acts. Other cases cited are not in point.

In Burnet v. Wells, supra, five irrevocable trusts were established to pay for insurance on the grantor's life, accumulate the income to pay additional premiums, collect the policy upon his death and apply the proceeds of the trust for the benefit of certain named dependents, most all of them his children. It was held that the income of the trust applied to the maintenance of the contracts of insurance for the support of his dependents was income for his benefit.

In Phipps v. Helvering, supra, the income from the trust estate was to be used to pay premiums on a policy issued upon the life of the petitioner's husband. If he died leaving the grantor surviving him, the trustee was to use the proceeds of the policies, together with other property forming part of the trust and the accumulated income, if any, therefrom, to pay inheritance and other taxes and to transfer to the grantor the trust estate remaining.

Each case depends for decision on its own peculiar facts. In this case the facts differ from those in the above cited cases in these respects. The grantor of the trust divested herself of all interest in the insurance policies. She could not withdraw the insurance policies except in agreement with her husband and he was a person having an adverse interest. If the husband predeceased her she did not receive the proceeds of the insurance. She could not withdraw them, nor surrender them for their cash value, nor permit

them to lapse. Of course, if these proceeds were properly invested her income from the trust would increase. But the same thing would happen if the dividends on the stock increased. No part of the trust income was accumulated for future distribution to the grantor. She had no obligation to support her husband nor any of his heirs. It is not shown there were any heirs issue of the marriage. It may be assumed there were none as none were named as beneficiaries.

We think it plain, construing the whole section, that it is only when part of the income of the trust is held or accumulated or held for future distribution to the grantor, or be distributed to the grantor, that premiums paid on life insurance policies donated to the trust are to be considered income of the grantor. In this case the grantor could never receive anything from accumulations or the proceeds of the insurance. To hold that the grantor had an economic interest in the policies would require adding conjecture to conjecture as to what might happen in the future. We agree with the conclusions of the Board.

The petition is denied and the judgment is affirmed.