ESTATE OF EDWARD H. WADEWITZ, DECEASED, ROBERT S. CALLENDER, WYNNEFRED W. CALLENDER, CAMILLE W. WADEWITZ AND FIRST NATIONAL BANK AND TRUST COMPANY OF RACINE, EXECUTORS, AND NETTIE M. WADEWITZ, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61526. Filed May 29, 1959.

*Leo C. Duersten, Esq.*, for the petitioners.
*Thomas J. Donnelly, Jr., Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined deficiencies in the income taxes of Edward and Nettie Wadewitz for the years 1949, 1950, and 1951, in the respective amounts of $8,861.80, $9,959.93, and $9,940.89.

The issues presented for decision are:

(1) Whether the income of the E. H. Wadewitz Trust #1 for the calendar years 1949, 1950, and 1951 was held or accumulated for future distribution to petitioner Nettie Wadewitz (one of the grantors of said trust), so as to cause such trust income to be includible in her individual income, under the provisions of section 167(a)(1) of the Internal Revenue Code of 1939.

(2) Whether certain long-term capital gains derived by the E. H. Wadewitz Trust #2, qualify, under section 162(b) and (d)(1), as trust income which is currently distributable to the beneficiaries, so that petitioner Nettie who was one of said beneficiaries is taxable with her proportionate share of said capital gains.

Petitioners have conceded on brief that petitioner Nettie's share of the ordinary income of E. H. Wadewitz Trust #2 for each of the years involved was currently distributable to her, and was properly included by the respondent in her individual income for the respective years.

All of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Such facts as are necessary for an understanding of the issues presented are hereinafter set forth.

The petitioners in the instant case are Nettie M. Wadewitz and the estate of her deceased husband, Edward H. Wadewitz, who died on January 15, 1955. During the taxable calendar years 1949, 1950, and 1951, Edward and Nettie resided in Racine, Wisconsin; and they timely filed a joint Federal income tax return for each of said taxable years, with the collector of internal revenue for the district of Wisconsin. The estate of Edward is a party hereto solely by reason of his having joined in the filing of said joint returns.

### E. H. Wadewitz Trust #1.

On December 14, 1938, Edward and Nettie executed an indenture of trust, under which they created a trust that is hereinafter called Trust #1. Edward at that time contributed to the trust four policies of insurance on his life, with a total face value of $90,000. All right, title, interest, and benefits in such policies were assigned to

the trustees; and such policies were made payable to the trustees. Nettie, at the same time, transferred to the trustees 1,000 shares of the 5 per cent preferred stock of Western Printing & Lithographing Company, a corporation of which Edward was president. The trustees of the trust, at all times material, were Nettie and her son and daughter.

The provisions of the trust indenture insofar as they are here material, were in substance as follows: The trustees were to expend as much of the principal and income of the trust as might be necessary to pay the premiums on the above-mentioned insurance policies; and any income of the trust which was not so used for the payment of premiums, was to be added to and become a part of the trust corpus. After the death of Edward and the collection of the proceeds of the policies, the trustees were to pay Nettie $800 per month, out of the principal and income of the trust, for the remainder of her life. Following the death of Nettie (or if she should predecease Edward, then following his death), the trustees were to divide the then remaining trust corpus into as many equal separate shares as there were children of Nettie and Edward then surviving. Such shares were thereafter to be held by the trustees as separate trust funds; the income and principal of the same were thereafter to be distributed to or for the benefits of said children and others, as provided in the trust instrument.

Edward was born on February 22, 1878; and Nettie was born on March 28, 1882. As before stated, Edward died on January 15, 1955.

During the taxable years, which are 1949, 1950, and 1951, Trust #1 derived income solely from dividends on the Western Printing & Lithographing Company preferred stock, which after payment of trust expenses was in the respective net amounts of $6,033.50, $6,129, and $5,948.52. As required by the trust indenture, a portion of each of these amounts was used to pay premiums on the above-mentioned policies of insurance on Edward's life; and the balance thereof was added to the corpus of the trust. The amounts so paid for premiums were $3,423.25 for 1949, $3,401.75 for 1950, and $3,271.50 for 1951.

Nettie did not include in her income reported on the joint income tax returns which she and Edward filed for the years 1949, 1950, and 1951, any of said income of Trust #1.

The respondent, in his statutory notice of deficiency, determined that all of the above-mentioned net income of Trust #1 was, pursuant to the provisions of section 167(a)(1) of the 1939 Code, includible in the income of Nettie.

We think that said determination of the respondent should be sustained.

Section 167(a)(1) provides, so far as here material, as follows:

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

   (a) Where any part of the income of a trust—

     (1) is, * * * held or accumulated for future distribution to the grantor; * * *

  \*       \*       \*       \*       \*       \*       \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

In the instant case, all of the trust income here involved was derived from the shares of Western Printing & Lithographing Company preferred stock which Nettie had contributed to the trust; and there apparently is no dispute, and we believe that there properly can be no question, that all of said income was "held or accumulated" by the trust. This is true, even though some of such income was applied by the trustees in payment of premiums on the insurance policies on Edward's life; for this Court held in *Margaret R. Phipps*, 42 B.T.A. 329, 332–334, affd. (C.A.D.C.) 124 F. 2d 288, that use of the income of a funded insurance trust to pay premiums on policies of insurance on the life of the taxpayer-grantor's husband, was an accumulation of such income within the meaning of section 167(a)(1) of the Revenue Acts of 1932 and 1934, the provisions of which are identical with those of section 167(a)(1) of the 1939 Code.

The petitioners here contend, however, that said trust income was not held or accumulated *for future distribution* to the grantor, Nettie. They argue that, since she had to survive Edward in order to receive the $800 monthly payments from the principal or income of the trust, there was only, as they put it, a "bare possibility" that any of the income so accumulated would be distributed to her.

But section 167(a)(1) does not depend for its application upon the trust income being held or accumulated for *unconditional* future distribution to the grantor; to the contrary, the authorities indicate that said section is applicable if the grantor is named in the trust indenture as a beneficiary to whom, if living, the accumulated trust income will be distributable. In *Kent* v. *Rothensies*, (C.A. 3) 120 F. 2d 476, 478, certiorari denied 314 U.S. 659, the Court of Appeals said:

In effect, both the taxpayer and the district court would read Section 167 as though it provided that the trust income is taxable to the grantor if it "is unconditionally held or accumulated for future distribution to the grantor."

We find no justification for such a construction either in the language of * * * [section] 167 or in the purpose of Congress in enacting Section 167. Indeed, when we consider that Congress was dealing with the problem of eliminating the use of the trust device as a means of avoiding surtaxes we can hardly think that it intended to weaken the effectiveness of the remedy it was devising by making it applicable only when the right of a grantor to accumulations of trust income was vested or unconditional. To read into the section so restricted a meaning is to destroy its practical utility as a means for preventing tax avoidance.

It is our duty to construe the statutory language as written. Nowhere in Section 167 is there any suggestion that the accumulations of trust income must actually be distributed to the grantor in order to make the section applicable. * * * Nor is there any suggestion in the section that the trust income must be held or accumulated exclusively for the grantor. The plaintiff is not only one of a number of persons to whom distribution may eventually be made but in fact is the presumptive taker of the trust accumulations. As a practical matter, so long as the plaintiff is alive the accumulations of the trust income are for him. And since the Revenue Acts are concerned solely with the practical aspects of income taxation and not with the question whether the right of the taxpayer to the income is conditional or unconditional, contingent or vested subject to being divested by death, we think the plaintiff is subject to the tax under the language of Section 167 as written.

To the same effect see *Margaret R. Phipps, supra; Commissioner* v. *Morton*, (C.A. 7) 108 F. 2d 1005; *Kent* v. *United States*, (Ct. Cl.) 60 F. Supp. 203. Various other cases relied upon by petitioners are distinguishable on their facts, in that in none of such cases was there any definite provision made for distributions of the accumulated income to the grantor.

On the basis of the authorities which we have cited above, we hold that the income of Trust #1, for each of the taxable years 1949, 1950, and 1951, was held or accumulated for future distribution to Nettie, within the meaning of section 167(a)(1) of the 1939 Code, and that the same is includible in her income for said years.

### *E. H. Wadewitz Trust #2.*

On June 30, 1941, Edward created a second trust with Nettie and their two children as trustees, and he transferred to the trustees certain shares of the common stock of Western Printing & Lithographing Company. This second trust is hereinafter referred to as Trust #2.

The provisions of the indenture under which this trust was created, insofar as here material, may be summarized as follows: The trustees were to pay Nettie, from the principal and income of the trust, $1,000 per month, beginning on January 1, 1942, and continuing during her lifetime. The trustees also were to make certain monthly payments from principal or income to other named members of the grantor's family. The trustees were empowered to sell shares of the Western Printing & Lithographing Company common stock, which composed the corpus of the trust. The trustees were given complete discretion to determine how all receipts and disbursements of the trust should be credited, charged, or apportioned between principal and income; and their decisions in such matters were not subject to question by any beneficiary.

During the taxable years 1949, 1950, and 1951, the trustees of Trust #2 received dividends on the shares of Western Printing & Lithographing Company common stock which they held; and they

also realized capital gains from sales of certain shares of this stock. The total amounts of ordinary income and capital gains thus received and realized by the trustees in said years were $13,339.41, $13,220.21, and $12,297.96, respectively. Such amounts were insufficient to provide completely for the several monthly distributions which, under the terms of the trust indenture, were to be made currently to Nettie and the other named beneficiaries; and no distributions from said trust income actually were made. However, Nettie's proportionate shares of such amounts were as follows:

| Year | Total amount of trust income | Nettie's fractional interest | Nettie's proportionate share | | |
|---|---|---|---|---|---|
| | | | Total | Ordinary income | Capital gains |
| 1949 | $13,339.41 | 120/167 | $9,585.20 | $5,205.70 | $4,379.50 |
| 1950 | 13,220.21 | 120/162 | 9,792.74 | 5,841.38 | 3,951.36 |
| 1951 | 12,297.96 | 120/154 | 9,582.83 | 4,758.00 | 4,824.83 |

Nettie did not include in her income reported on the joint income tax returns which she and Edward filed for the years 1949, 1950, and 1951, any of her proportionate shares of the ordinary income or of the capital gains received and realized by Trust #2. However, the trustees of Trust #2 did report on their fiduciary income tax return (Form 1041), for each of the taxable years, all of said ordinary income and capital gains; and paid income taxes thereon.

The respondent, in his statutory notice of deficiency, determined that Nettie's proportionate shares of said ordinary income and capital gains of Trust #2, were includible in her income under the provisions of sections 22(a), 161, and 162(b) of the 1939 Code; and on brief he has indicated that principal reliance is placed on the latter section. As aforesaid, the petitioners have conceded on brief that the ordinary income of Trust #2 is taxable to Nettie; and thus the controversy as to the present issue is limited to the proper treatment of the capital gains.

Section 162, insofar as here material, provides as follows:

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year *which is to be distributed currently* by the fiduciary to the \* \* \* beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the \* \* \* beneficiaries *whether distributed to them or not.* \* \* \* [Emphasis supplied.]

In the instant case there is no dispute that the capital gains involved do constitute taxable income, either to the trust or to the beneficiaries;

nor is there any dispute that, if such gains are currently distributable to the beneficiaries, Nettie's proportionate shares thereof are in the amounts above shown. The dispute is whether the capital gains were actually currently distributable.

Petitioners contend that the trustees, under the indenture, had an absolute and not-to-be-questioned power in their discretion to allocate these capital gains, either to corpus or to income; that they actually did allocate them to corpus; and that, therefore, such gains were not currently distributable to Nettie.

The record herein does not show that the trustees in fact added the gains to corpus. We have neither the testimony of the trustees, nor their books and records, to shed light on their treatment of the gains. We do have the fiduciary tax returns (Form 1041) which they filed for the taxable years, wherein they reported the capital gains, and we know that they paid the tax thereon. But this treatment of the capital gains on the returns is equivocal, inasmuch as on the selfsame returns, the trustees also reported and paid tax on the ordinary income of the trust—which petitioners now concede was currently distributable to Nettie.

Moreover, even if it were shown that the trustees had added the capital gains to corpus, Nettie's proportionate shares thereof would, in the circumstances of the instant case, be currently distributable to her. This is so, because she was entitled to $1,000 per month for life, to be paid out of *principal and income* of the trust. Those stipulated facts which we have summarized in the table above, show that the trust's ordinary income for each of the taxable years fell far short of an amount sufficient to make distributions to the beneficiaries of the amounts provided in the trust indenture. As a result, each of such beneficiaries (including Nettie) could have demanded that the trustees distribute sufficient principal (which, under the hypothesis here assumed, included the capital gains here involved) to make up the difference between a particular beneficiary's proportionate share of the ordinary income of Trust #2 and the total distribution to which such beneficiary was entitled. As applied to Nettie's case, she could have required that the trustees distribute to her all of her proportionate share of the trust's capital gains, since her said share was, in each year, less than the difference between the $12,000 per year provided for her by the trust indenture and her share of the trust's ordinary income. The conclusion must be that Nettie's proportionate shares of the trust's capital gains were currently distributable, whether the trustees had classified such gains as income, or added the same to corpus.

The situation in the instant case is comparable to that which was presented in *Irish* v. *Commissioner*, (C.A. 3) 129 F. 2d 468, affirming 43 B.T.A. 864, where the question was whether the settlor could

demand distribution of the capital gains of a trust, so as to render him taxable thereon. In said case, the Court of Appeals said (at 471–472):

The final inquiry then is whether the petitioner, as settlor of the trust, having the right to withdraw corpus annually up to $18,000, is taxable for the capital gains (i.e. income) realized by the trust in the years 1935 and 1936. * * *

By the terms of the trust indenture not only was the petitioner entitled to receive for life the distributable trust income as determined by the law of Pennsylvania but also, under his right to withdraw corpus, he could obtain the capital gains derived from the sale of trust assets so long as such gains did not aggregately exceed in any one year the withdrawal limit of $18,000. To that extent it was therefore within the settlor's "unfettered command" or uncontrolled discretion to enjoy by withdrawal of corpus (not exceeding $18,000 in any one year) the equivalent of any or all capital gains from the sale of corpus assets. For the years in question the capital gains which the petitioner could thus have received were $644.20 and $2,073.67. The fact that he did not elect to enjoy such corpus gains in the years in which they accrued is wholly immaterial for the tax is assessable according to what *may* be done under the trust rather than what *is* done under it. *Greenough* v. *Commissioner*, 1 Cir., 74 F. 2d 25, 27.

Applying the foregoing principles, we hold that Nettie's proportionate shares of the capital gains here involved were currently distributable to her; and that the same are includible in her gross income, under section 162(b) of the 1939 Code. The respondent is sustained as to this issue.

*Decision will be entered for the respondent.*