Aaron **BARZILAY** and Aaron Barzilay,
Executor of the Estate of Nancy Ann
Barzilay, deceased, Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. 65–527.

United States District Court
S. D. Florida.

Dec. 16, 1965.

Melvin N. Greenberg, of Greenberg & Saks, Miami, Fla., for plaintiffs.

Richard M. Roberts, Acting Asst. Atty. Gen., Myron C. Baum and J. Patrick Whaley, Dept. of Justice, Washington, D. C., and Edward F. Boardman, U. S. Atty., Tampa, Fla., for defendant.

MEHRTENS, District Judge.

This is a tax refund suit brought by the plaintiff taxpayer for himself individually and as Executor of the estate of his deceased wife. The parties have entered into a formal stipulation of facts upon which they have agreed to have the Court enter such judgment as it deems proper.

The following facts have been stipulated to and are accepted by the Court as true:

1. In the years 1960 and 1961 taxpayer Aaron Barzilay was engaged in the business of dealing in mutual funds, which business was operated as a proprietorship. (Aaron Barzilay is a party hereto as Executor of the estate of Nancy Barzilay only because a joint federal income tax return was filed for the year in suit, 1961, by him and his wife, Nancy Barzilay.)

2. During the year 1961, the taxpayer maintained two checking accounts, of which he designated one as his personal account and the other as his business account. Periodically, as the need arose, he drew checks from the business account (called "drawings") which were deposited in his individual account. In 1960, his personal "drawings" were $32,-210.91 and in 1961, $48,000.00. It was his customary procedure, when payment of his estimated income tax became due, to draw a check on the business account payable to the Internal Revenue Service. In 1961 checks payable in the following amounts were drawn on the business account and made payable to the Internal Revenue Service for estimated taxes for the following years:

| Date | Amount | Tax Year |
|---|---|---|
| January 16 | $ 4,000.00 | 1960 |
| April 14 | 1,847.38 | 1960 |
| April 14 | 5,000.00 | 1961 |
| June 12 | 7,000.00 | 1961 |
| September 15 | 20,000.00 | 1961 |

Thus, $5,847.38 was paid on account of the taxpayer's personal income tax liability for 1960, and $32,000 was paid on account of the liability for 1961.

3. On December 7, 1961, the taxpayer properly elected pursuant to Section 1361 of the Internal Revenue Code of 1954 to have his proprietorship taxed as a corporation for the year 1961 and the following years, and he filed a federal income tax return for the year 1961 for his "section 1361 corporation," as it is known by applicable Regulations. That return showed total distributions as follows:

| | |
|---|---|
| Salary allowance | $48,000.00 |
| Payment for federal income taxes | 37,847.38 |
| Purchase of Fidelity-Philadelphia Trust Fund for Corp. | 5,000.00 |
| Dividend to Proprietor | 78.85 |
| Total | $90,926.23 |

4. The taxpayer and his wife also filed a joint individual federal income tax return for the year 1961 on which the aforementioned salary of $48,000 and dividend of $78.85 were reported as taxable income, but the $37,847.38 paid with respect to their 1960 and 1961 income tax liabilities was not reported as taxable income on that return. Income tax of $19,-366.70 and self-employment tax of $216.-00, a total of $19,582.70, was shown on that return to be due and owing. Estimated payments totaling $32,000 and a dividend received credit of $388.06, a total of $32,388.06, were applied against

the $19,582.70 tax liability, and the taxpayers requested on that return that the excess, $12,805.36, be credited against their estimated income tax liability for 1962.

5. After an audit by the Internal Revenue Service, the Commissioner of Internal Revenue, acting through his duly designated agent, the District Director of the State of Florida, determined that $33,308.15 of the $37,847.38 paid on account of the taxpayer's 1960 and 1961 income tax liabilities was a distribution taxable to him as a dividend under the provisions of Section 1361(k). That dividend was determined as follows:

| | |
|---|---|
| Estimated tax for 1961 paid within that year by the corporation on Aaron Barzilay's 1961 individual income tax | $32,000.00 |
| $\frac{23.72^*}{100.00}$ x 5847.37 (Balance of Barzilay's 1960 income tax paid by the corporation in 1961) | 1,387.00 |
| | $33,387.00 |
| Less: Dividend reported | 78.85 |
| Unreported dividend determined | $33,308.15 |

\* Ratio of other than business income to total income reported on Aaron Barzilay's 1960 return

A deficiency was assessed accordingly and was paid by the taxpayer.

6. A claim for refund was timely filed, and this action was timely brought on that claim.

### OPINION

Section 1361 was first enacted into law in the Internal Revenue Code of 1954. It had no counterpart in any previous revenue law. Its purpose, according to the Senate Finance Committee in which Committee that Section originated, was "to permit certain proprietorships and partnerships the opportunity to elect to be taxed as a domestic corporation while still conducting the business of the enterprise as a proprietorship or partnership." S. Rep. No. 1622, 83d Cong., 2d Sess., p. 455 (3 U.S.C.Cong. & Adm.News (1954) 4621, 5099). Thus, Section 1361 provides that certain types of business, after a proper election, shall be treated, for tax purposes, as if they were an incorporated entity and that the owners of that business shall be treated, for tax purposes, as if they were shareholders.

Section 1361(b) sets forth the qualifications of a business which may elect to be treated as a corporation. The taxpayer's mutual fund business satisfied all those requirements.

Section 1361(a) provides that a qualified business may make an election to be taxed as a corporation. That subsection reads as follows:

"Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his delegate, not later than 60 days after the close of any taxable year of a proprietorship or partnership owning an unincorporated business enterprise, by the proprietor or all the partners, owning an interest in such enterprise at any time on or after the first day of the first taxable year to which the election applies or of the year described in subsection

(f), to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years."

The taxes described in subsection (h) are the corporate taxes on income, accumulated earnings, and capital gains. Thus, as a result of the taxpayer having elected on December 7, 1961, to have his business taxed as a corporation, that business was known as a "section 1361 corporation" and became, for tax purposes, an entity separate and apart from the taxpayer during the entire year 1961 even though the election was not made until December of that year.

Section 1361(k), which provides for the treatment of distributions from a "section 1361 corporation" to the owners of that corporation, reads as follows:

"Except as provided in subsection (*l*), a distribution with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), other than a distribution of personal holding company income under subsection (i) (3), shall be treated as a corporate distribution in accordance with part I of subchapter C of this chapter."

The effect of this subsection is to treat all distributions, other than distributions in redemption or liquidation, as taxable dividends. In this respect, Treasury Regulations on Income Taxes (1954 Code), Section 1.1361–10, provides the following general rule:

"(a) *General Rule.* (1) Except as provided in paragraph (b) of this section, all distributions from a section 1361 corporation to an owner of such corporation, with respect to his interest in such corporation, occurring at any time on or after the first day of the first taxable year to which the election applies shall be treated as corporate distributions to a shareholder in accordance with part I, of subchapter C, chapter 1 of the Code. Thus, for example, if a calendar year partnership makes a distribution in March 1958, and sub-

sequently the partners make an election under section 1361 for 1958, the distribution is treated as a corporate distribution unless otherwise provided in paragraph (b) of this section."

There is, however, an exception to that general rule. The exception is found in Section 1.1361–10(b) (3) of those same Regulations and provides:

"(b) *Exceptions.* The provisions of paragraph (a) (1) of this section shall not apply to:

\*    \*    \*    \*    \*    \*

"(3) A distribution which is used by an owner of a section 1361 corporation *to pay an expense or obligation* (including taxes under local or Federal law) *properly attributable to the business enterprise,* whether or not such expense or obligation was incurred prior to the first taxable year to which the election under section 1361 applies. For example, if an owner of a section 1361 corporation withdraws money from the business to pay the previous year's local real property tax attributable to property used in the business enterprise or the portion of his last quarterly payment of estimated tax for the *previous year attributable to the business enterprise,* such withdrawals would not be subject to the provisions of paragraph (a) (1) of this section, *even if* for the previous year the enterprise was not a section 1361 corporation." [Emphasis added.]

The purpose and theory of this regulation is obvious. Section 1361 provides that an electing business will be treated as a corporation; thus, any debts incurred *by that business* would be the obligation of that business and not of the owners of the business who are treated under Section 1361 as separate entities, stockholders. Therefore, payment of those debts by the corporation would be "properly attributable to the business enterprise" and for the benefit of, and taxable to, the corporation and thus not for the benefit of, and taxable to, the taxpayer. Similarly, as in the example contained in the regulation,

payment of a tax attributable to the business for the year preceding the election to be taxed as a corporation would also be "properly attributable to the business enterprise" and would not be taxable as a distribution to the individual taxpayer.

In the instant case, the Commissioner did apply Section 1.1361–10(b) (3) with respect to 1960, the year previous to the year of the election. He did so by determining what portion of the $5,847.38 paid in 1961 on account of the taxpayer's 1960 tax liability was attributable to non-business income and what portion was attributable to business income. Mechanically, those amounts were determined by multiplying the $5,847.38 by a fraction the numerator of which was the taxpayer's nonbusiness income for 1960 and the denominator was the taxpayer's total income for 1960. The resulting product was $1,387, which was treated and taxed as a distribution to the taxpayer under Section 1361(k) of the Code. This treatment was not only consistent with, but was compelled by the intent of the statute and by Section 1.1361–10(b) (3) of the Regulations, for the debt, to the extent of $1,387, was not that of the "section 1361 corporation" (that corporation only being taxable on its income), but was the personal obligation of the taxpayer (having been incurred with respect to his individual non-business income). On the other hand, the difference between the $5,847.38 and the portion attributable to non-business income, $1,387, was $4,460.-37, and that amount was treated as a corporate debt paid by the "section 1361 corporation" on its own behalf. Again, this treatment was also consistent with and compelled by the statute and by Section 1.1361–10(b) (3), for a taxpayer is not taxable upon the payment of a debt which is not his debt.

As to the year 1961, the Commissioner determined that the entire $32,-000 which was paid on account of the taxpayer's income tax liability for that year was a taxable distribution within the meaning of Section 1361(k) of the Code. This determination, contrary to the assertion of the taxpayer, was and is entirely consistent with Section 1.1361–10(b) (3), for that section has no application to payments made with respect to the taxpayer's individual income tax liability for the year 1961. The very language of that section demonstrates that it is only applicable to payments "properly attributable to the business enterprise" of the corporation in the course of the operation of its business. The reasons for this are patent. Once the owner of a business elects to have the business treated as a corporation for tax purposes, the only tax liability which that corporation has is the liability which arises with respect to its own income, i. e., the income earned from its business operations, or as the regulations state "properly attributable to the business enterprise."

The basic error of the taxpayer here is that he fails to recognize the fact that the $32,000 in dispute was paid with respect to his individual income tax liability and not with respect to the tax liability generated by the business income of the "section 1361 corporation" itself. In short, the taxpayer's insistence upon the $32,000 being a payment "attributable to the business enterprise" within the meaning of Section 1.1361–10(b) (3) of the Regulations completely ignores that very language of that section and the explicit purpose of 1361. In view of that language and that purpose, there can be no other conclusion but that the $32,000 was a taxable distribution within the meaning of Section 1361(k).

The taxpayer asserts that the $32,000 payment was caused by the fact that this was his estimated tax liability based upon his operation of the business as a proprietorship, prior to the election, and that, after such election, this became the tax liability of the "section 1361 corporation."

While it may be true that the $32,000 estimated liability was predicated on the continuance of the business as a proprietorship without any election, once the election had been made the section 1361 corporation's liability was something separate and apart from that of the taxpayer as an individual. It must be re-

membered that, once an election is made to have a proprietorship taxed as a corporation, it becomes a separate entity taxable as such, and its tax liability is entirely separate from that of the taxpayer individually. Hence, when the $32,000 was paid in 1961, it was a payment only of the individual liability of the taxpayer by the use of "corporate" funds (for, under the express terms of the statute, the election of corporate treatment is for the entire taxable year and thus dates back to the first day of such year, in this case January 1, 1961).

■ Clearly, a corporation may not pay the individual debts of one or more of its stockholders, whether tax debts or otherwise without having such payment deemed a dividend distribution. An election having been made here, the same result follows.

Even though the $32,000 liability was computed on the income of the business enterprise, it was no longer due and payable, for after the election, taxpayer was only taxable on distributions from the "corporation" in the form of salary, dividends or the like. Hence, to the extent that taxpayer's liability was reduced, he was entitled to a refund of whatever portion of the $32,000 was no longer due and payable, and, indeed, a refund of $12,805.-36 was credited to his estimated tax liability for 1962. Thus, taxpayer did not refund any part of such $12,805.36 to the "corporation," but used it to pay his 1962 estimated taxes; similarly his reduced liability of $19,582.70 was also paid with money obtained from the business, now treated as incorporated.

Thus, taxpayer paid his taxes·with corporate funds; instead of paying taxes out of his $48,000 salary, as all other individuals do. He kept that salary intact and had the taxes thereon paid by his "section 1361 corporation." In the case of regular corporations, such payment of an employee's or stockholder's taxes is additional income to the individual. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 729, 49 S. Ct. 499, 73 L.Ed. 918. The same result follows where the proprietorship is treated for all tax purposes as if it were incorporated. It is taxpayer's retention of the $32,000 for his own benefit which created the additional income and the tax liability in suit. The payment of that sum from business funds was therefore a taxable distribution under Section 1361 (k).

Taxpayer asserts that he received no economic benefit from the payments with respect to his income tax liability and cites Burnet v. Wells, 289 U.S. 670, 53 S. Ct. 761, 77 L.Ed. 1439; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; and Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, rehearing denied, 343 U.S. 952, 72 S.Ct. 1039, 96 L.Ed. 1353, in which decisions in favor of taxability were predicated upon receipt of income measured by an economic benefit received. But, as shown, taxpayer did receive a very substantial economic benefit here. Here the moneys were clearly applied for the benefit of the taxpayer, for they were used to pay his personal income tax liability incurred with respect to his own taxable income. The $1,387 was applied to pay his tax liability for the year 1960. The $32,000 was applied to satisfy his estimated tax liability for the year 1961, and that $32,000 was credited against his income tax liability as returned for that year with the excess $12,805.36 carried forward as a credit against his estimated income tax liability for 1962. Thus, these payments were manifestly made by the "section 1361 corporation" for the use and benefit of the taxpayer in satisfying his personal obligations and were distributions to him taxable as income. Old Colony Trust Co. v. Commissioner of Internal Revenue, supra; United States v. Boston & M. R. Co., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929.

Thereupon it is

Ordered, adjudged and decreed that judgment be entered in favor of the defendant and against the plaintiff. Counsel for defendant is directed to submit a final judgment in accordance with the above findings and opinion within ten (10) days.